Van Brunt, P. J.
I cannot concur in the conclusions arrived at by Mr. Justice Daniels upon this appeal, (post, 39.) It does not seem to me that interest, as matter of law, ran upon the $75,000 which Asa Worthingtons passed to his account in June, 1861. This amount was not considered even by him as a fixed and definite sum with w'hich Henry B. Worthington was to-be charged. It is apparent that it was only an approximation and estimate, and it is evident that this amount was to be subject to future adjustment. Asa Worthington says: “The sum of $75,000, now passed to my credit, appears to be near enough to the right one, under present appearances; but time-will determine whether these estimates are correct, and I must be debited or credited with the difference, as the case may be.” In another part of the entry he says: “It is now, however, involved in the assets of your business, and I do not consider that it is at present due and payable to me. Our fortunes- and business have been linked together up to the present time without any. agreement or understanding between us of our relative interests. You have-been involved by my imprudence in a large outlay of cash funds, resulting in your being compelled to take real estate heavily incumbered for your security. These incumbrances must be removed, and much time consumed, before you can realize from it. It would be evidently unjust for me or my heirs to demand payment of my claim before you had had reasonable time to realize from the assets out of which it arises. To your ingenuity and perseverance is mainly due this claim I hold against you, and should your assets (now more-doubtful than before the existence of our country’s difficulties) prove to be of less value, or yield less, than was contemplated when the accounts were adjusted, (31st December, I860,) it is but right that a due proportion of the loss- or depreciation should be deducted from my claim.” He then goes on and says: “If the assets you hold should prove worthless, for instance, I should have no claim upon you; and so in proportion to their depreciation I must bear a proportionate rate of the loss, charging me with the same until my share-of the net profits, or my compensation, rather, be no more than one-third of your net profits. And this adjustment, in case of my absence/I must and do-confidently, cheerfully leave with you.” The whole of this declaration shows that this interest was a mere estimate, dependent for future adjustment upon the realization of assets whose value had been estimated, and seems to have-been made simply for the purpose of establishing a rate of compensation whose-amount depended upon the amount realized from these assets. He further says that the amount is not only not due, but no demand could be made for its payment until after a reasonable time to realize upon the assets from which it arises had elapsed. It seems to me evident that there was no such adjustment of the accounts as would carry interest as matter of law. neither do I think that the referee erred in placing little credence upon the testimony of Carrington as to what transpired at the time of the interview of Mr. Worthington and his sister. An examination of his testimony shows that Henry B. Worthington not only did not pretend to read from the book about the waiver of interest, but that what he did say about interest was simply argument from what did appear in the book. The language used by the witness in testifying as to what Mr. Worthington said shows that he did not pretend to be reading from the book, but making a statement independent of the book. In fact, one version given by Carrington shows conclusively that the claim of reading from the book was an after-thought. He says, speaking of Henry B. Worthington reading from the book: “ He read the agreement that the father was to have $75,000, and this waiver,—to the effect that the father [reading from the book] could not claim it as a cash payment, because it was involved in the assets.” The portion that Worthington is here represented as reading from the book, and which the witness calls the waiver, is actually in the book, and there is no evidence that he read anything else as a waiver. The witnessCarrington, even, does not pretend that he did, and the word “waiver” is evi *39 dently a word used by the witness, and not Worthington. Fraud is not to be imputed upon such evidence as this. It may be that Henry R. Worthington may have stated that his father could not claim interest because it was not cash, but involved in the assets, and in this we think he was right; but the evidence nowhere justifies the conclusion that Worthington pretended tobe reading a waiver of interest from the book. In fact, the weight of the evidence is that he did not so pretend to read. .The judgment appealed from should be affirmed, with costs. .
Brady, J., concurs.