GEORGE MORRIS *et al.*, Appellants, *v.* EDWIN W. WELLS, Respondent.

*Supreme Court, Fourth Department, General Term, September* 19, 1889.

1. *Appeal. Questions of law.*—Exceptions to alleged findings of fact, unsupported by the evidence, and to refusals to find, established by undisputed proof, present questions of law and are reviewable on appeal.
2. *Same.*—A refusal to respond to a request to find, unless prejudicial, is not ground for reversal.
3. *Same. Error cured.*—The subsequent admission of evidence, erroneously excluded, cures the error.
4. *Same. Conflicting findings.*—If the findings within and without the report are inconsistent, the appellant is entitled to the finding most favorable to him.
5. *Evidence. Declarations.*—The declarations of an assignor for creditors, made at various times before the assignment, are incompetent in an action to replevin the assigned goods from the assignee on the ground that the sale thereof to the assignor was induced by fraud.
6. *Same. Inventory.*—In such action, the assignor's inventory is admissible.
7. *Same.*—A statement, sent to a mercantile agency by a person other than the assignor, is inadmissible in such action, though the assignee is the person who sent such statement.
8. *Same.*—In such action, the assignor may testify to his intent in purchasing the goods.
9. *Same.*—The question, "If you did so swear, is it true ? " is objectionable in form.
10. *Fraud. Essentials.*—It must be shown, in order to establish fraud, that the representations were known by the person making them to be false and made with intent to defraud.
11. *Witness. Impeachment.*—A party cannot impeach his own witness by contradictory statements.

Appeal from a judgment, entered in Onondaga county, in favor of the defendant on the report of a referee. The action was replevin. It was brought to recover certain articles of personal property sold by the plaintiffs to the firm of Scoville & Roe. The plaintiffs sought to rescind the

contract and recover the property in question upon the ground that the sale thereof was induced by fraud. The defendant was the assignee for the benefit of creditors of the firm of Scoville & Roe.

On the trial the referee found that the plaintiffs were partners; that the defendant's assignors were also partners at the time of the sale of the goods referred to in the complaint; that the defendant was a counsellor at law doing business in the city of Syracuse; that on the 20th of September, 1887, Scoville & Roe made a general assignment, for the benefit of their creditors, to the defendant, which was accepted by him, and that he duly qualified and entered upon the discharge of his duties as such; that by such assignment preferences were made to the amount of $1,169.-19; that the purchase of the goods in question was made in the usual and ordinary course of business, and was necessary for the business of the defendant's assignors; that the plaintiffs sold said goods relying upon a communication or report of the financial standing of Scoville & Roe made by the Wilber Mercantile Agency about April 13, 1887; that such communication was not based upon any statements or information furnished by or received from Scoville & Roe, or either of them, and that it was made without their knowledge or consent; that said goods were not purchased by Scoville & Roe with the preconceived design not to pay for them; that no false representations were made by them to the plaintiffs, upon which they relied, to induce the sale of the goods in question that the value of the goods replevied was $233.32; that the title to such goods was in the firm of Scoville & Roe at the time of their failure, and passed to the defendant; that the damages for the detention of such goods was $9.33.

The referee found as a conclusion of law that the defendant was entitled to judgment for the possession of the property in question, and if it could not be recovered, then for its value, and the sum of $9.33 damages for its detention, with costs.

The referee at the request of the plaintiffs also found among other things that in the month of April or May, 1887, Scoville & Roe purchased of the plaintiffs' agent the goods referred to in the complaint; that previous to taking the order and making such sale, the agent made inquiries of Scoville, one of the assignors regarding the standing and responsibility of such firm and the members thereof for the purpose of ascertaining the credit of said firm and taking their order for the goods referred to in the complaint; that at the time of making such inquiries Scoville stated to said agent that he, Scoville, was personally worth $6,000; that such statement was false; that it was communicated to the credit man of the plaintiffs before the shipment of the goods in suit and before the delivery thereof to the defendant's assignors; that on or about the 17th of August, 1887, between that day and the fourth of September of that year, the plaintiffs delivered to the defendant's assignors the goods so sold; and that the goods were received and accepted by them.

*Sam. H. Wandell*, for appellants.

*C. V. Kellogg*, for respondent.

MARTIN, J.—The only question relating to the finding of the referee, or to his refusal to find as requested by the plaintiffs, which we deem it necessary to examine, arises upon his finding " that no false representations were made by Scoville & Roe to the plaintiffs upon which the plaintiffs relied, to induce the sale of the goods in question," and upon his refusal to find " that plaintiffs' agent relied on the said statement so made by Scoville that he was personally worth $6,000, and sold the bill of goods referred to in the complaint upon the strength of such representation."

The plaintiffs excepted both to the finding referred to and to the referee's refusal to find as requested. " Exceptions to alleged findings of fact, when they are unsupported by

evidence, and to the refusals to find, when they are established by undisputed proof, present questions of law, and are re-viewable on appeal." Bedlow *v.* N. Y. Floating Dry Dock Co., 19 N. E. Rep. 800 ; 20 N. Y. State Rep. 707 ; Bullock *v.* Bemis, 20 N. Y. State Rep. 836.

The referee found that the goods in question were sold by the plaintiffs' agent ; that at the time of the sale he made in-quiries of Scoville, one of the vendees, as to the standing and responsibility of the firm and the members thereof; that Scoville stated that he was worth $6,000, and that such statement was false. The undisputed evidence was that the agent relied upon such representations in making such sale. Woolston, the plaintiffs' agent, testified as follows : " I sold the bill of goods on the information I got from Scoville direct. The purport of it was that Scoville was individually good for $6,000." Folio 73. " The conversation was to the effect that Mr. Scoville was personally worth $6,000, and upon that I based my judgment in selling the goods." Folio 68.

If the representations were made, and the referee has so found, then it is clear frem the evidence that the plaintiffs' agent relied upon them in making such sale, and the learned referee erred in refusing to so find, and in finding to the contrary, although the plaintiffs made other investigations as to the responsibility of such firm and its members before shipping the goods. Nor can it be said that the findings con-tained in the referee's report are to control. Such is not the rule. If the findings are inconsistent, the appellants are entitled to the finding most favorable to them. Redfield *v.* Redfield, 110 N. Y. 671.

Assuming, as we must, that the referee erred in such find-ing, and refusal to find, it follows that the judgment must be reversed, unless the error was a harmless one. The re-fusal of a referee to respond to a request to find is not a ground for reversal, unless such refusal was prejudicial to the appellant. Matter of Hicks, 14 N. Y. State Rep. 320.

While the findings of the referee, and the undisputed evidence in the case establish the making of such representations, their falsity, and that they were relied upon in making such sale, still there is no finding of the referee, nor conclusive evidence to the effect that such representations were known to be false when made, nor that they were made with an intent to defraud the plaintiffs, but, on the contrary, the referee refused to find that such sale was induced by the fraud of the defendant's assignors.

Before the defendant's assignors could be found guilty of fraud, and the sale of the goods in question avoided on the ground of such representations, it was necessary to establish that the representations were known to be false by the person making them, and that they were made with an intent to defraud the plaintiffs. Meyer *v.* Amidon, 45 N. Y. 169; Oberlander *v.* Spiess, Id. 175; Hubbell *v.* Meigs, 50 N. Y. 480; Wakeman *v.* Dalley, 51 Id. 27; Simar *v.* Canady, 53 Id. 298; Stitt *v.* Little, 63 Id. 427. There being no such proof or finding, we do not perceive how the plaintiffs could possibly have been injured by such error, as in the absence of such findings the result must have been the same. Moreever, the plaintiffs submitted no request to find those facts. Porter *v.* Smith, 35 Hun, 118; Graff *v.* Ross, 47 Id. 152. Our conclusion is that this error of the referee was harmless, and hence would not justify a reversal of the judgment.

On the trial, the plaintiffs attempted to prove the declarations of one of the defendant's assignors made at various times before the assignment. This evidence was objected to by the defendant. The objection was sustained, and the plaintiffs excepted, and the plaintiffs contend that the referee erred in excluding that evidence. We think the ruling of the referee was justified by the authorities. Truax *v.* Slater, 86 N. Y. 630; Bullis *v.* Montgomery, 50 Id. 352; Vidvard *v.* Powers, 34 Hun, 221; Flagler. *v.* Wheeler, 40 Id. 125; Flagler *v.* Schoeffel, Id. 178. If these rulings were erron-

eous, still the plaintiffs were not prejudiced, as the questions were subsequently answered by the witness.

The plaintiffs called one of the defendant's assignors as a witness, who testified that he was employed by the defendant at a salary of fifteen dollars per week. He was then asked if he testified, on an examination in supplementary proceedings, as follows: " I suppose I am on a salary. There was no arrangement as to the amount I was to receive; " and he replied, " I might have sworn to it." This was followed by the question : " If you did so swear, was it true ? " This question was objected to, and the objection was sustained.

It is quite apparent that the only purpose of this evidence was to affect the credibility of the witness by the proof of contradictory statements. As the witness was called by the plaintiffs, the evidence was not admissible for that purpose. Becker *v.* Koch, 104 N. Y. 394. If, however, the evidence was sought for any other purpose, the question in that form was objectionable, and the court, in its discretion, was justified in excluding the answer.

The defendant introduced in evidence the inventory of the firm of Scoville & Roe, under the plaintiffs' objection and exception. The ruling of the referee in admitting this evidence seems to be justified. Adams *v.* Bowerman, 109 N. Y. 23. Besides, the same facts were proved by the plaintiffs on a direct examination of the witness Scoville.

It was not error to permit the defendant's assignor to testify that he did not purchase the goods in question with an intent to cheat the plaintiffs, nor with an intent not to pay for them. Seymour *v.* Wilson, 14 N. Y. 567 ; Cortland Country *v.* Herkimer County, 44 Id. 22.

The plaintiffs asked the witness Woolston this question : " Did you rely upon this statement ? " referring to the statement that Scoville was worth $6,000. This was objected to and excluded. If this was error, it was harmless, as the witness had already testified that " the conversation was to

the effect that Mr. Scoville was personally worth $6,000, and upon that I based my judgment in selling the goods. I sold the bill of goods on the information I got from Scoville direct. The purport of it was, that Mr. Scoville was individually good for $6,000." This evidence shows clearly that the plaintiffs' agent did rely upon such statement in making the sale.

Nor do we think the refusal of the referee to permit the witness Woolston to answer the following question : " Did you believe this statement to be true ? " requires a reversal of this judgment, as he was permitted to testify that he based his judgment on that statement in selling the goods, which shows clearly that he believed it.

The statement sent by Wells to the Wilber Mercantile Agency was properly excluded. It was not admissible. The defendant's assignors knew nothing of it, and were not shown to have any connection with it in any way. It was not evidence against them, nor was it proper evidence in the action against the defendant.

The counsel for the appellants has called our attention to thirty exceptions relating to the admission or rejection of evidence by the referee. Most of them seem not to have been deemed sufficiently important to merit any suggestion or remark by counsel, except to state the folio where found, and that they " were well taken." We have, however, examined them all. The preceding considerations apply to many and the most important of them. Our examination of the remainder has led us to the conclusion that they neither require special discussion nor warrant a reversal of the judgment.

We are of the opinion that the decision of the referee is justified by the evidence, and that no error was committed on the trial that would authorize any interference with the judgment appealed from.

Judgment affirmed, with costs.

HARDIN, P J., and MERWIN, J., concur in result.

NOTE ON "INTEREST."

Interest does not usually survive the payment of the principal. Mc-Creery *v.* Day, 119 N. Y. 1.

The acceptance of the principal prevents an action for the recovery of interest. Devlin *v.* Major, etc., 60 Hun, 68.

Protest does not affect the rule. Id.

Interest is always chargeable where there is an express or implied agreement to pay it. Newton *v.* Manwaring, 56 Hun, 645.

The statement of the balance of an account as approximate and subject to adjustment, does not bear interest, where a subsequent modification was made. Ledyard *v.* Bull, 50 Hun, 604.

Chap. 623 of 1866 did not prevent the chamberlain from stipulating with the banks for the payment of interest on the city's deposits therein. Mayor, etc., *v.* Nat. B. Bk., 126 N. Y. 665.

An agreement for interest on deposits of funds in bank may be inferred from the course of dealing between the parties. Mayor, etc., *v.* Nat. B. Bank, 56 Hun, 649.

The act of 1866 in no respect attempted to abridge or divest the chamberlain of authority to reserve interest upon such deposit. Id.

After such agreement, a bank cannot resist payment upon the ground that the chamberlain was not authorized to contract therefor. Id.

As to when a legacy to an infant draws interest from the death of the testator, see Matter of Dubernell, 20 N. Y. St. Rep. 353.

Legacies draw interest from a year after the decedent's death. Matter of Wallace, 24 N. Y. St. Rep. 405.

As to when interest is allowed on a legacy from the death of the testator, see Lyon *v.* I. S. Ass'n, 127 N. Y. 402.

Legacy, in this case, held to carry interest only from time it was payable. Id.

As to when interest is properly allowed on a legacy from the date of the will, see Gilbert *v.* Morrison, 53 Hun, 442.

A legacy draws interest from the issue of letters testamentary, and not from the death of the testator. Hiscock *v.* Fulton, 63 Hun, 624.

Interest on a general pecuniary legacy begins to run one year after the grant of letters. Matter of McGowan, 124 N. Y. 526.

In the absence of an express direction in the will, a legacy becomes due, and interest begins to run, at the end of one year from the issuing of letters testamentary. Matter of Prior, 32 N. Y. St. Rep. 712.

As to what facts are not sufficient to show an intention of the testator that interest be paid on the legacy from his death, see Thorn *v.* Garner, 113 N. Y. 198. As to when interest to an infant child is not payable from the time of the death of the testator, see case last cited.

Such legatee is not chargeable with interest on advances on the legacy, though charged on the co-executor's book as loans. Id.

A legacy, directed to be paid as soon as convenient after the testator's death, is payable at the time prescribed by law. Matter of Seymour, 27 N. Y. St. Rep. 762.

A general legacy, unless otherwise expressly directed, bears interest after one year from the testator's death. Id.

A legacy to a child by one in *loco parentis* does not bear interest from the testator's death, where its maintenance is otherwise provided for by the will, or in any other mode. Matter of Vedder, 40 N. Y. St. Rep. 119.

Where the debt due from the legatee is set-off, interest thereon should be apportioned among the life tenants of the estate and remainder men, though none is collected during the lifetime of the former. Matter of Jenning, 19 N. Y. St. Rep. 786.

The residuary legatee for life is entitled to the accruing interest. Matter of Mead, 27 N. Y. St. Rep. 36.

Where a legatee is not dependent upon the testator, no presumption exists that he intended a postponed legacy to draw interest. Lyon *v.* Ind. S. Ass'n, 52 Hun, 359.

As to when interest is not allowed on a legacy to a child. Matter of Morgan, 19 N. Y. St. Rep. 515.

The tender of the amount of the legacy stops the running of interest. Id.

Interest is payable upon the liquidation of an existing debt then due. Chester *v.* Jumel, 125 N. Y. 237.

Interest is not recoverable on unliquidated claims. Matter of Merchant, 53 Hun, 638; Chamberlain *v.* Dunlop, 54 Id. 639.

As to when interest on a claim for unliquidated damages allowed, see Mansfield *v.* N. Y. C. & H. R. R. R. Co., 114 N. Y. 331.

As to when interest will begin to run on contested and unliquidated claims, see Carricarti *v.* Blanco, 121 N. Y. 230.

In actions for personal injuries, the allowance of interest is a matter for the jury. Reiss *v.* N. Y. S. Co., 35 N. Y. St. Rep. 86.

The jury may give interest in an action for negligence, causing permanent injury to property. Wilson *v.* Troy, 60 Hun, 183.

Under chap. 139 of 1877, interest cannot be recovered on a claim for tort, until sixty days after due presentation. Id.

As to when a public officer should not be charged with interest, see Clark *v.* Sheldon, 58 Hun, 602.

A bank, which was one of the designated depositories of the city funds prior to May, 1873, under an agreement to pay towards the expenses of the chamberlain's office, pursuant to chap. 623, of 1866, is not liable for interest on the deposit. Mayor, etc., *v.* Tradesmen's Nat. Bk., 56 Hun, 649.

Proof that other depository banks paid interest under like circumstances cannot enlarge the liability. Id.

Where interest is intended to be paid at a rate specified until the principal shall be paid, no subsequent change of the statute will affect the rate of interest until merged in the judgment. Wilcox *v.* Van Voorhis, 58 Hun, 575.

The holder of a seven per cent. mortgage is entitled, after maturity, only to the statutory rate. Loos *v.* Wilkinson, 113 N. Y. 485; rev'g 51 Hun, 74.

Note on "Interest."

Interest is not payable until the amount of principal is definitely fixed. Ledyard *v.* Bull, 119 N. Y. 62.

Interest does not run in case of an award in condemnation proceedings until default is made in payment. Devlin *v.* Mayor, etc., 60 Hun, 68.

Interest on money payable on an endorsed check cannot be recovered until the check so endorsed is presented. Cooper *v.* Townsend, 59 Hun, 624.

An agreement to pay money in such manner as will be acceptable to the promisee, does not draw interest, until a demand or the commencement of an action. Lawrence *v.* Church, 128 N. Y. 324.

Interest does not accrue upon a promise to pay at future time, without an express or implied contract, until a breach. Hanley *v.* Crowe, 50 Hun, 605.

A note, bearing interest, given for the interest due on another note, in the absence of previous agreement, is not illegal. Goodrich *v.* Clute, 50 Hun, 605.

Where property is taken, under chap. 191 of 1888, for school purposes, there is no way to prevent the running of interest on part of the award during the four months provided for by the statute except by paying or tendering the award and interest to the time of payment or tender. Devlin *v.* Mayor, etc., 131 N. Y. 123.

After the expiration of the four months, the interest depends upon a demand. Id.

See further on this point, Matter of Maine, 62 Hun, 334; Matter of Vedder, 42 N. Y. St. Rep. 300; Matter of Stewart, 131 N. Y. 274; Little *v.* Ellison, 63 Hun, 624.