## *In re* VEDDER'S WILL.

*(Surrogate's Court, Rensselaer County. June, 1891.)*

**1. CONSTRUCTION OF WILL—INTEREST ON LEGACY.**

The intention of testator that his legacy to a child, whom he termed his "adopted daughter," should not bear interest, is clearly shown by the terms of the will giving to his wife for life the interest and income of all his estate, and making express provision for the disposal of the entire estate on her death.

**2. SAME—EXTRINSIC EVIDENCE.**

The presumption that the legacy should bear interest is likewise overcome by the extrinsic evidence that the child was indentured to the wife as well as to testator by a writing wherein they agreed to receive it as an adopted daughter, to reside in their family, and to be maintained, clothed, educated, and treated, as far as practicable, as if it were in fact their child; and by the further evidence that the child was so treated by the wife after testator's death.

**3. SAME—PROFITS.**

Under the devise to the wife of the income and "profits" of his real and personal property for life her personal representatives were not entitled to the excess over what they were inventoried at, for which certain securities belonging to the estate were sold after her death, as such increase would not, in the absence of an evident intent in the will to the contrary, be included in the term "profits," and, if it were, the sale would have to have been made in her life-time to have entitled her and her representatives to it as profits, there being no profits until a sale.

**4. SAME—RES ADJUDICATA.**

Where executors, who were also trustees under the will, authorized by the will in their discretion to sell the real estate and convert it into money, bring suit for the construction of the will, which makes bequests of all the property payable on the death of the widow, who had the income and profits of the entire estate during her life, asking when the bequests were payable, and whether certain bequests therein were void, it is within the proper object, purpose, and scope of the action that they should have determined what ultimate disposition should be made, after the widow's death, of the property as to which testator dies intestate, because of such void bequests; and the determination of the court that the whole estate was to be treated as personal property, and that the excess arising from such void legacies belonged to the widow and next of kin, to be divided among them as provided by statute for the distribution of personal property, is conclusive on the heirs, who were parties, and did not appeal, the question having been directly raised by the pleadings.

Judicial settlement of the trustees and executors, etc., of Nicholas S. Vedder, deceased.

Nicholas S. Vedder died in 1879, leaving a will, which was shortly thereafter duly admitted to probate by the surrogate of Rensselaer county. He left, him surviving, a widow, Nancy A. Vedder, but no children or descendants. Ida Angell, a child of about nine years of age, was a member of his family at the time of his decease, and had been such for about six years. The testator and his wife had procured her from an institution in New York, known as the "American Female Guardian Society," in 1875. The child was indentured to them by the society by an indenture in writing, and they assumed therein certain duties and obligations; among others, "to receive said apprentice as an adopted child, to reside in the family of the party of the second part, and to be maintained, clothed, educated, and treated, as far as practicable, by them, with like care and kindness as if she was in fact the child of the party of the second part." The testator during his life-time, and his wife after his decease, faithfully observed their agreement in their treatment of said Ida, and the said testator in his will terms her his "adopted daughter."

The provisions of the will, so far as they are necessary to be considered, are as follows: "*Item First.* I give and bequeath unto my wife, Nancy A. Vedder, all my household furniture, useful and ornamental, pictures, plate, and wearing apparel. *Second.* I give and bequeath unto my said wife, Nancy A. Vedder, the income and profit of all my other estate, both real and per-

sonal, of which I shall die seised or possessed, for and during her natural life." General legacies to the amount of $27,000 are provided for in the will, including the two legacies for which the legacy to Ida A. Vedder, of $8,000, provided for in the codicil, executed not long after assuming the care of said Ida, is a substitute. The codicil, dated July 25, 1875, provides as follows: "I revoke and cancel the bequest contained in the fourth item of said will, of $5,000, to my wife's sister, Fanny A. Mann; and [Martha Mann and Alvanda Homing, mentioned in the ninth item of said will, being dead] I revoke and cancel the bequest [$3,000] and benefit to and for Phœbe Mann, therein provided, in case of the death of said Martha Mann; and in place thereof I give and bequeath the sum of $8,000, being the sum of said former bequests, to my adopted daughter, Ida A. Vedder." The eleventh and last item of the will provided as follows: "Of the remainder of my estate I give, devise, and bequeath one-half unto the Troy Orphan Asylum of the city of Troy, N. Y., and the other one-half unto the trustees of the Troy Annual Conference for the uses and purposes specified in the third section in their act of incorporation, passed March 30, 1864." By the last item the testator appoints Daniel D. Bucklin, of Lansingburgh, and Otis G. Clark, of Troy, executors and trustees of his will, with power of sale as follows: "I authorize them and their successors in this trust, in their discretion, to sell my real estate, and convert same into money."

About February, 1888, an action was brought by said executors and trustees in the supreme court for the construction of the will. In the complaint said executors allege that at the time of the making of said will the property of said testator did not exceed the sum of $50,000, but that since that time the property had increased to such a degree that they believe that the real estate (all of which is situated in the state of New York) is of the value of $37,000; and that the personal property left to his wife for her use they believe to be of the value of $106,000; that the property given absolutely to his wife is of the value of about $1,000; and that said testator left no debts. The complaint also alleges that in consequence of said increase of said property, after the making of the will and before his death, the provision for the benefit of the Troy Orphan Asylum and the Troy Annual Conference has become void under the law forbidding the devise of more than one-half of a decedent's estate after the payment of his debts to any charitable or religious institution, etc., where the testator at the time of making his will and at his death had a wife. The complaint further alleged that some of the legatees under said will claim that the legacies to all persons, save those to Nancy A. Vedder, Alida Van Guysling, Troy Orphan Asylum, and Troy Annual Conference, are to be paid within a year after the death of testator; while Nancy A. Vedder contends that none of the legacies other than hers are payable until after her death. It is also alleged that some of the heirs at law and next of kin of testator are his grand nephews and nieces, and are not entitled to share in the distribution of his personal property; and plaintiffs asked the direction and judgment of the court whether the whole of that portion of the estate as to which the said Nicholas S. Vedder shall be adjudged to have died intestate, if there be any such portion, shall be taken from the personal property, and distributed according to the rules of law applicable to personal property; or whether a part shall be distributed from the real property, and an interest in the real property shall be held to be vested in the heirs at law; if any such interest in said real estate shall be held to be so vested in such heirs, then what that interest may be. Trial was had in said action. All parties interested had due notice, and appeared; the infants by their special guardians. A decision of the court was made in said action and entered on the 11th day of June, 1880, construing said will, and adjudging that Nancy A. Vedder is entitled to the use and income of all property, real and personal, of which testator died the owner, during the period of her natural life; that none of the

legacies in the will and codicil, nor the interest or income thereof, are payable until after the death of Nancy A. Vedder, and that no income or interest will accrue thereon for any period during her life; that the legacy of $8,000, given to said Ida in the codicil, belongs to her, subject to the life-interest of the said Nancy A. Vedder. It was further decided "that, as the said will provides for the conversion by the executors of the real estate left by said testator into personal property, the whole estate must be considered and treated as personal property; that the gift in said will to the Troy Orphan Asylum and to the trustees of the Troy Annual Conference is void under the statutes of this state in so far as the same exceeds one-half of the amount of the estate of said testator; that as to such excess the said Nicholas S. Vedder died intestate, except in so far as the will has invested in said executors the power and duty to hold and take care of the same, and to pay the income thereof to said Nancy A. Vedder during her natural life;" that such excess belongs to the widow, said Nancy A. Vedder, and the next of kin of testator, deceased, to be divided among them as provided for distribution of personal property in case of intestacy. And it is further provided "that, inasmuch as the said Nancy A. Vedder is entitled to the income of her share of the said last-mentioned personal property for her life, and to the principal of that share under the statute of distribution, she will be entitled to demand and receive from the executors her share thereof before the proper court; that the remainder of such property as to which the said Nicholas S. Vedder died intestate, except as to the rights of said widow therein, shall remain in the hands of the executors until after the death of said Nancy A. Vedder." Subsequently, and on the 16th day of November, 1882, in the surrogate's court of Rensselaer county, an accounting was had, and a decree entered in accordance with said judgment. It was therein provided that property of which the testator died intestate (according to said judgment, exclusive of certain real property, which had not been sold) was of the value of $30,044.67, of which the widow should receive $14,436.02, leaving the sum of $10,436.03 to be distributed, according to said judgment, one-half among the next of kin of deceased, and the remainder to Troy Orphan Asylum and Troy Annual Conference after the death of Nancy A. Vedder. A second accounting was had in the same court, and a decree therein entered March 10, 1888. The occasion of such accounting was the sale by said executors of certain real estate left by deceased, known as the "Pattern-Shop Property," which was sold for the sum of $30,000. The decree provided that the same, after deducting certain expenses, should be divided as follows: One quarter—$7,494.88½—each to the Troy Orphan Asylum and the Troy Annual Conference, and the balance of $14,017.86⅓, after deducting the expenses and disbursements of the accounting and commissions, was divided as follows: One-half, being the sum of $7,008.93, to be paid to Nancy A. V. Hartshorn, she having in the mean time married Mr. Hartshorn, and the remaining half to be held in trust, the income to be paid to Nancy A. V. Hartshorn during her life-time, and, after her death, to be divided among the next of kin of testator. Under these two decrees the distribution of the personal estate and the real estate, so far as the real had been sold, was settled and determined, and distribution made and provided for in accordance with the terms of said judgment. Nancy A. V. Hartshorn received the income, during her life, upon the entire estate, and also, in pursuance of said judgment, her share, as widow, of the portion as to which the testator died intestate, except certain real estate sold since her death. Upon the present accounting the executors show that they have sold the house and lot known as the "Homestead" since the death of Nancy A. V. Hartshorn, which occurred on the 9th of June, 1890, for $14,000; that they hold for the payment of taxes assessed on said estate, and taxes paid in 1890, $350.64, leaving a balance on account of said real estate of $13,649.36. They have sold the cottage at Round lake for $800; also the pew in the North Second Street Methodist

Church for $100; and a safe for $35; aggregating $14,584.36. They have sold also certain securities which they had originally received as a portion of the trust-estate, or in which they invested the trust fund at or prior to the first decree of said surrogate's court; and they show that the securities brought an advance above the amount they had stated on the first account of $10,220.86, which must be added to the amount above stated, $14,584.36, making the sum of $24,805.22, which, with $117,619.09, the trust fund held by the executor during the life of Mrs. Vedder, and still in his hands, makes altogether $142,436.07, which amount, less expenses and commissions, must be distributed under the decree upon the final accounting of said executors and trustees.

*Townsend, Roche & Nason*, for Otis G. Clark, sole surviving executor. *McClellan & McClellan*, for Simon F. Mann, temporary administrator of the estate of Nancy A. V. Hartshorn, deceased, and for Edward E. Stevens and another. *John H. Peck*, for Troy Annual Conference. *King & King*, for Troy Orphan Asylum. *Horatio G. Glen*, for executors of the estate of Myndert Schermerhorn, and for Catharine M. Fellows. *Matthew Hale*, for Willard K. Brooks, Walter Brooks, and Belle Smith. *William Lord*, for H. W. Gordinier, general guardian of Ida A. Vedder, an infant. *Seymour Van Santvoord*, for William Lord, as special guardian of Ida Vedder. *Saunders & Myers*, for John E. Cary, Peter Van Guysling, Nicholas V. Guysling, Eliza Luke, Mary Sagendorf, Alexander A. Gilchrist, Thomas A. Gilchrist, Gertrude Shufelt, and Sarah G. Carpenter. *Nelson Davenport*, for executors of Daniel D. Bucklin, deceased, executor and trustee.

LANSING, S. Several questions have arisen upon this accounting as to the proper disposition to be made of the fund yet remaining in the hands of the executors and trustees for distribution. The persons presenting adverse claims have been represented by numerous and able counsel, who have pressed their views upon the court with great force and ability, and have submitted numerous briefs, evincing great industry and research in the law pertaining to the questions in dispute. The questions involved are substantially questions of law only. I shall consider them in the order of their statement.

The first question is as follows: Is Ida A. Vedder (a legatee under the will of said deceased to the amount of $8,000) entitled to interest upon her legacy from the death of the testator to the death of testator's widow, Nancy A. (Vedder) Hartshorn, which occurred some 10 years thereafter? The facts pertaining to this question are briefly these: Ida Angell, termed in the will Ida A. Vedder, was taken from an institution in the city of New York, when about $3\frac{1}{2}$ years of age, by Mr. and Mrs. Vedder, for the purpose, as appears, of receiving her into their family, and rearing her as their own child; they having no children of their own. A few months after receiving her, the institution (reciting that it had the authority to do so) entered into a formal agreement in writing under seal with Mr. and Mrs. Vedder, by which she was indentured to them as an apprentice until she reached the age of 18 years, on certain terms and conditions therein mentioned; and it was especially provided in said instrument by the parties thereto that it was the intent and meaning thereof that Ida should be received into the family, maintained, clothed, and educated and treated with like care and kindness as if she was in fact the child of Mr. and Mrs. Vedder. The evidence clearly shows that she was so received, educated, clothed, and maintained during the life-time of the testator, and at his death she continued a member of the family of Mrs. Vedder, and received the same treatment down to the time of her death. A legacy to Ida of $8,000 was given by the codicil to testator's will, made shortly after she became a member of his family. By this codicil he revoked items 9 and 11 of his will, which contained two items aggregating $8,000, which were legacies to adult persons, the interest and income of which was to be paid to his wife, Nancy,

v. 15 N. Y. s. no. 15—51

during her life-time, and gave the same to Ida.   He terms Ida, in the codicil to his will, his "adopted daughter," but makes no other provision for or mention of her in his will.   The income of the entire estate, real and personal, including the portion given to Ida, was given to his wife during her life-time, and there was no provision for the payment of any legacies to anybody, or for the payment of any money for any purpose, prior to her decease; and the entire estate was disposed of by the terms of his will.

The question presented under this state of facts is: "Did the testator intend the legacy of $8,000 to be a provision for the maintenance of his adopted daughter, and that interest be paid her thereon during the life-time of his wife?"   The question is one of intent.   The rule is well settled in the construction of wills that the intention of the testator, if not contrary to law, will, when ascertained by the courts, be enforced.   The right of the testator to dispose of his property by his will, when not contrary to the provisions or policy of the law, is as well settled as his right to dispose of the same during his life-time.   The legal obligation of a testator to support one as to whom he is *in loco parentis,* or even his own child, continues only during his life. *Brown* v. *Knapp,* 79 N. Y. 142.   It is a well-settled rule of law that legacies draw interest only from the time when either by law—which is one year from death of testator—or by the express terms of the will they are payable.   *Lupton* v. *Lupton,* 2 Johns. Ch. 626–628; *Bradner* v. *Faulkner,* 12 N. Y. 472.   But there is a well-settled exception to this rule, which is laid down as follows by the learned and accomplished author of Redfield on Wills: "Where a legacy is given by a parent to his child, or by one *in loco parentis* by way of maintenance, and the possession of the principal deferred, it is held that the legatee is entitled to interest from the death of the testator.   But this rule will not apply where the maintenance of the child is otherwise provided for by the will or any other mode."   2 Redf. Wills, p. 566.   In Williams on Executors, at page 1429, (marginal paging,) the rule is in these words: "If the legatee be not an adult, interest on the legacy shall be allowed as a maintenance, and from time of death of testator, if there be no other provision for that purpose;" and the rule in the language above quoted from Williams on Executors is stated with approval by DAVIES, C. J., in *Cooke* v. *Meeker,* 36 N. Y. 19.   The counsel for the guardian *ad litem* of the infant challenges the correctness of the rule as above stated, and insists that the will alone is to be looked to, and that interest upon a legacy, the payment of which is deferred, must, where the legatee is the child of the testator, or one to whom the testator stood *in loco parentis,* be paid from the death of testator, where there is no other provision made in the will for the maintenance of such infant legatee.   In his view it is immaterial how ample a provision has been made and enjoyed by the infant from any other source; in other words, that nothing will defeat the payment of interest on the legacy to the infant, under such circumstances, but a provision in the will for its support.   I am unable to assent to this view of the law, and I think no well-considered case can be found to sustain that position.   The language of two or three cases in this state, when considered apart from their facts, lends some support to the doctrine.   The cases of *Lupton* v. *Lupton, supra, Brown* v. *Knapp,* 79 N. Y. 141, and *Thorn* v. *Garner,* 113 N. Y. 202, 21 N. E. Rep. 149, are cited in support of the contention of the guardian *ad litem.*   But each of these cases, when carefully examined, will be found to state only what is termed the general rule in the construction of wills respecting the payment of interest upon legacies to infants.   In each of the cases it is stated in general terms that the rule is that, where there is no provision made in the will for the maintenance of such infant legatee, interest will be allowed from the death of testator by way of maintenance.   This rule, as we understand, when taken in connection with the reason upon which it is based, is to be applied when looking at the will alone, interpreting it by its own terms.

Neither of the cases holds or professes to decide that, where ample provision is found outside of the will for the maintenance of the infant, whether from the bounty of the testator or otherwise, that the legacy will draw interest from the death of the testator. There is nothing, therefore, actually decided in the cases cited by the counsel for guardian *ad litem* in conflict with the rule as laid down by Judge REDFIELD. Indeed, the courts expressly say in case of *Brown* v. *Knapp*, *supra*, that the rule is based upon the presumption that the testator in such a case must have intended that the legatee in the mean time should be maintained at his expense. And in the case of *Thorn* v. *Garner*, *supra*, Judge PECKHAM says: "The fact that the legacy was payable to an infant child, * * * and there is no other provision made in the will for the maintenance of such legatee, has been regarded as a fact sufficiently indicative of the intention of the testator to authorize the payment of interest from his death, although such direction was not found in the will." The fact that in such a case no other provision is found in the will for the maintenance of the infant creates the presumption only that the testator intended that interest should be paid upon the legacy from his death. But this presumption may be overthrown not only by the import and terms of the will itself, but also by evidence extrinsic to the will. In the case of *Brown* v. *Knapp* the court, after having stated that the absence of a provision for maintenance created the presumption that the testator intended the legacy to draw interest, adds "that this presumption is not overthrown by the language [of the will] used in the bequest to his daughter;" thus clearly implying that it was at last simply a question of intent; that the presumption raised upon the one hand in favor of interest is not conclusive, but might be overthrown if a contrary intent appeared in the will. In the case of *Thorn* v. *Garner* the court considers in detail a large amount of evidence extrinsic to the will, for the purpose of ascertaining whether the testator intended the legacy (in that case of $1,000,000) should draw interest from the death of the testator or from the time fixed by law, (one year thereafter,) and reaches the conclusion that, from the evidence furnished by the terms of the will itself and the evidence extrinsic to the will, the testator did not intend the legacy to draw interest until it was payable, and reversed the decision of the court below, which had allowed interest under the rule cited by the learned counsel for the guardian *ad litem*. In case of *Lyon* v. *Association*, 5 N. Y. Supp. 326, the very point under consideration here, namely, as to whether the court could look outside of the will for the purpose of ascertaining whether the infant had a provision for its support, was carefully considered, and the court expressly held: "If the fact exists that the legatee is not dependent, then no presumption exists that the testator intended the postponed legacy to draw interest; and it is immaterial whether or not there is other provision in the will for the legatee." And the court adds: "We are not unmindful of the fact that the expression has been used in many cases where interest has been allowed, 'that no other provision was allotted by the will,' seeming to imply that the will alone can be looked to to determine the question; but, as I have before remarked, if we go outside of the will to make a case for claiming interest, no reason exists for not going outside to defeat interest. The result of the authorities appears to be to establish this rule: that, where a parent gives a legacy to an infant, and no other provision is found in the will for its support, the legacy presumptively draws interest from the death of the testator, but that the absence of such provision creates a presumption only, which may be overthrown by evidence in the will itself of a contrary intention, or the presumption may be repelled by evidence extrinsic to the will that the infant had other means of support."

*First.* In the present case it seems clear from the very terms of the will that the testator did not intend said legacy should draw interest from his death, for (1) in express terms he gives to his wife the interest and income of

his entire estate, real and personal, leaving no room for inference that he intended interest upon this legacy to be paid to his daughter Ida, year by year, after his decease, during the life of his widow; and (2) he provided in his will no means from which the same could legally be paid, for he specifically devoted his entire estate to other purposes. Thus the presumption is overcome effectually, by the terms of the will itself, that he did intend such payment, and this is fatal to the claim.

*Second.* The extrinsic evidence is even still more clear, for from it we learn that Mrs. Vedder had become, with her husband, the guardian of Ida, and upon his death there devolved upon her the legal duty, as well as the moral obligation, to furnish Ida maintenance and support. And it further appears that, mindful of this obligation, Mrs. Vedder did care for her as for her own child, educating and clothing her, and affording her all the advantages which her large income and her station in life enabled her to do during her life.

*Third.* And it can hardly be doubted but that the testator, in making this ample provision for his wife of the entire income of his large estate, with no one to enjoy it except Mrs. Vedder and the child, Ida, contemplated that he was making a most ample and generous provision for the child of their mutual affection; and the result shows that his expectation was not disappointed, for she received a support in comparison with which the income from the $8,000 would have been a pittance. It is quite common in wills to provide thus indirectly for the education, maintenance, and support of children by simply providing the wife and mother with means for such purpose. Such a provision is usually effectual, while at the same time placing the children under such restraint as experience has shown to be wholesome.

In conclusion upon this point, we think it will hardly be claimed that at any time during the life-time of Nancy A. Vedder this infant would have been heard in court to compel the payment of this interest for her support. A sufficient answer would have been—*First,* that she was not dependent, but was in receipt of ample maintenance; *secondly,* that there was no fund provided by the will for the payment of such interest, and consequently none was intended; and, *thirdly,* that, as the legacy was not intended for her maintenance, no interest was payable upon it until it became due.

The second question presented for decision is: "Are the personal representatives of Nancy A. (Vedder) Hartshorn entitled to receive as profits, under the terms of the will, the increase in the value of the securities held by the executors and trustees of Nicholas S. Vedder, deceased, since 1882,—the time of the entry of the decree upon the first judicial settlement of said estate by the surrogate; or should such increase be held to be a part of the principal sum, and be divided among those entitled to receive the same?" These securities were inventoried, and constituted the greater portion of the estate of said testator. His widow received the income therefrom during her life-time. After her death the executors converted them into money, and realized by their sale an advance of $10,200. The second item of the will provides as follows: "I give and bequeath to my said wife, Nancy A. Vedder, the income and profits of all my other estate, [the first item of the will gave her goods valued at $1,000,] both real and personal, of which I shall die seised or possessed, for and during her natural life." The testator died possessed of both real and personal property to a large amount. The will authorized the executors, in their discretion, to sell the real estate, and convert the same into money. The personal representatives of Mrs. (Vedder) Hartshorn insist that, since under the terms of the will she is entitled to receive the "income and profits" of the estate during her life-time, she should receive as income of the real and personal estate the rents and interest, and also something beyond that, namely, the profits, and that the accretion to said securities, which is assumed to have accrued during her life-time, is

such profits.  Unquestionably, if the testator intended that his wife should receive whatever of increase in value accrued to his estate during her lifetime, and had so stated in his will, there is no legal principle that could be successfully interposed to prevent its receipt by her, if ascertained in her lifetime, or by her personal representatives after her decease.

*First.* The first question then is, did the testator so intend and provide in his will?  The word "profits," when applied to trade or business, means "the advance in price of goods sold beyond the cost of purchase."  Bouv. Law Dict.  The word "profits," when applied to real estate, means "the produce of lands," and is, as used in the phrase "rents, issues, and profits," synonymous with "rents."  Burrill, Law Dict. p. 344.  "Rents and profits" of real estate means "the sum annually yielded" by the same.  *Delancy* v. *Van Aulen*, 84 N. Y. 23.  The testator died seised of a large amount of real estate, which, for aught that appears, produced, or was capable of producing, an income; and, as the testator left it to the discretion of his executors when to sell the real estate, it may be fairly inferred that the word "profits" was used by the testator with reference to such rents as might be received by the executors from the real estate during the life of his wife. Indeed, it seems to us that the meaning of these terms, in the connection used, is too clear to require construction.  Certainly the words used are apt to express an intent by the testator, if entertained by him, to give to her the use and income of his estate, real and personal, and that alone; and it may be worthy of note that the supreme court, in construing the will, used the phrase "income and profits" as synonymous with "use and income."

*Second.* We find no evidence in the remaining provisions of the will, nor in the surrounding circumstances, from which it may be inferred that the testator intended to give his wife any sum greater than the annual income or interest and the rents of his estate.

*Third.* Since there is nothing in the terms of the will itself nor the surrounding circumstances indicating any specific intent on the part of the testator that his widow should receive the increase in the value of his estate during her life-time, the claim of her personal representatives, if any, must be based upon the legal proposition that the advance or increase in value of the estate or of the securities, under the circumstances here disclosed, belonged to her as life-tenant, without reference to any specific intent on the part of the testator to give her the same.  This proposition, we think, cannot be successfully maintained.  This very question has been repeatedly before the courts, and it is now settled by numerous and authoritative adjudications.  The rule, as settled, may be stated broadly to be that an increase from natural causes in the value of real and personal estate held as an investment does not constitute profits, and go to the life-tenant, but such increase becomes principal, and goes to the remainder-men.  In *Re Gerry*, 103 N. Y. 450, 9 N. E. Rep. 235, a case much in point, the court say: "The theory of the will did not contemplate any traffic in securities by the trustees, but a permanent investment in interest-bearing obligations, subject to be sold or exchanged when the exigencies of the trust required it to be done."  And the court adds: "If the will had required the trustees to invest in real estate, the rents, incomes, and profits of which were made payable to the life-tenant, with a remainder over, it cannot be questioned but that any increase in the value of the lands from natural causes would have been an accretion, and inured to the benefit of the remainder-men."  Perry, Trusts, § 545, p. 456; *Cogswell* v. *Cogswell*, 2 Edw. Ch. 231, 240.  "And we cannot see any difference in principle between this [an increase in value of securities] and the one supposed, [an increase in value of real estate.]"  The court further say: "The question here presented was up in the case of *Townsend* v. *Trust Co.*, 3 Redf. Sur. 222; *Whitney* v. *Phoenix*, 4 Redf. Sur. 180,—before the surrogate of New York, and it was there held that an enhancement of the value of United

States bonds, held in trust, went to the remainder-men, and not the legatee for life. These decisions accord with our views." See, also, *Clarkson* v. *Clarkson*, 18 Barb. 646; *Scovel* v. *Roosevelt*, 5 Redf. Sur. 121; *In re Pollock*, 3 Redf. Sur. 114; *In re Kernochan*, 104 N. Y. 618, 11 N. E. Rep. 149.

*Finally.* If the term "profits" could, in view of the law, be held to include the difference between the inventoried value of these securities in 1882 and the price for which they were sold after the death of Mrs. Hartshorn, in 1890, still she would not be entitled to the profits as such, since there was no sale or realization during her life-time. It is well settled that until the securities are actually sold and the transaction completed there are no profits. Increase in value becomes profit only when realized by sale; and in this case, there having been no actual realization or receipt of profit during the life of Mrs. Hartshorn, neither she nor her personal representatives are entitled to it. *Jennery* v. *Olmstead*, 36 Hun, 536, affirmed 105 N. Y. 654, 13 N. E. Rep. 926. It follows that the increase in the value of these securities must be held to belong to the principal, and be distributed as a portion of the same.

The third and remaining question is: Are the grandchildren of testator's deceased sister, namely, Willard Brooks, Walter Brooks, and Belle Smith, entitled to share as heirs at law in that portion of testator's real estate as to which, according to the decision of the supreme court, the testator died intestate; or must the entire estate, real and personal, be distributed as personalty to the widow and next of kin of said deceased? After the death of his widow, the testator, by his will, gives certain legacies to the different persons therein named, and finally of the entire remainder of his estate he gives, devises, and bequeaths one-half to the Troy Orphan Asylum, and the other half to the trustees of the Troy Conference. Shortly after the death of the testator the executors brought suit against the widow, legatees named in the will, the heirs at law and next of kin of said deceased, for the construction of said will, and all parties appeared and answered. The executors alleged in their complaint that they were advised that certain provisions of said will for the benefit of the Troy Orphan Asylum and Troy Conference were, under the facts stated by them, invalid under the laws of this state, and asked the judgment of the court thereon. The court held and decided that the gifts to the Troy Orphan Asylum and the Troy Conference, so far as they exceeded one-half of the testator's estate, were prohibited by law, and were void; and that as to the remainder of the estate the testator died intestate, and the same must be distributed according to the laws of distribution applicable to cases of intestacy. The court further held and decided (the question having been directly raised by the pleadings) "that said will provided for the conversion by the executors of the real estate left by the testator into personal property, and that the whole estate must be considered to be and be treated as personal property." And the judgment in the case provided, in terms, "that such excess belongs to the widow, said Nancy A. Vedder, and the next of kin of said Nicholas S. Vedder, to be divided among them in the manner provided in the statute regulating the distribution of personal property among the widow and next of kin, as in case of intestacy." The testator left no children, but nephews and nieces, and the grandnephews and grandniece above named. The right of these grandnephews and the grandniece to a portion of the testator's estate is now only in question. As to the personal property of the deceased these grandnephews and the grandniece have no claim, (2 Rev. St. p. 97, § 75, subd. 11,) but of the real estate they would ordinarily take their portions with the nephews and nieces as heirs at law in case of intestacy, (Id. § 75, subds. 8, 9.) It is conceded that the testator left sufficient personal property to pay all his debts and legacies, including the portion of the estate to which the Troy Orphan Asylum and the Troy Conference are by law entitled. It is insisted by the counsel for the said heirs at law that, as the testator died intestate as to the remainder of his property, after payment of debts and leg-

acies, a considerable portion of which is real estate, and as a large portion of that remaining to be distributed upon this accounting is the proceeds of the sale of real estate, the heirs at law are entitled to share in the distribution of the proceeds of said real estate. And it was further insisted by said counsel that, notwithstanding the court held by its judgment that by reason of the power of sale to the executors the whole estate left by the testator became converted into personalty, yet such conversion into personalty was only for the purposes of the will; and that, if any estate or interest in the fund arising from the sale is not legally and effectually disposed of by the will, there is a resulting trust or interest in favor of the heirs at law. In other words, the claim is that it is settled as a matter of law that, where there is a partial failure of the objects of the conversion, the undisposed portion of the surplus, where it is real estate, will result to the heirs, and that this is always so where there is no "out and out conversion," such as follows a peremptory direction to the executor to sell; and a number of authorities are cited in support of such position. We are inclined to think, although the earlier authorities are not altogether uniform, that the later authorities support this contention of the counsel for the grandnephews and grandniece of the testator.

In the case of *Chamberlain* v. *Taylor*, 105 N. Y. 185, 11 N. E. Rep. 625, Judge RUGER, speaking for the court, says: "The legal right of an heir to the real property of a deceased person cannot be defeated except by a valid devise of the property to another; and, although a testator may have intended a conversion of his real estate, this does not affect the transfer of title unless the intention is manifested in the mode and language required by the statute." And the learned judge adds: "The authority given the executor to sell the real estate did not work an equitable conversion, as there was no necessity for such conversion to satisfy the valid provisions of the will." But the heirs at law (grandnephews and grandniece) have not overcome the chief obstacle to their recovery. Let it be conceded that the equitable conversion of the estate was only for the purposes of the will, and that its purposes have all been met without recourse to the real estate, and that said heirs at law are entitled to share therein under the laws of descent, there still remains the judgment of the supreme court construing said will, to which the heirs at law and next of kin were parties, where the issues were specifically and definitely framed to obtain a decision from the court upon the very question raised here. It is not contended by the counsel for the heirs that the court did not have jurisdiction of the subject-matter and of the parties; in other words, that the executor was not authorized to seek the direction of the court as to the construction of the will or of the several provisions of the will as to which question was raised by the pleadings. But it is insisted by the learned counsel for the heirs that, "so far as the suit or action asked the court to decide as to whether that portion of the estate as to which the will was ineffectual went to the heirs at law or next of kin, it went beyond 'the proper object and scope of such suit;' and any adjudication upon the question was, therefore, not binding upon the parties in a proceeding like this, to determine who is entitled to the real estate now in the hands of the executors, and remaining for distribution." Numerous authorities are cited, holding, in effect, that the rights and interests of parties to actions which were not the proper subject-matter of such action or within its scope and object are not conclusively disposed of by the judgments therein. *Rathbone* v. *Hooney*, 58 N. Y. 463; *Outram* v. *Morehood*, 3 East, 346, 357. We do not think that doctrine applies here. It was within the "proper object, purpose, and scope" of the action for the construction of the will that the executors should have determined—*First*, if there was any portion of the estate as to which the testator died intestate; *secondly*, (as it was the right at least, if not the duty, of the executor under the power of sale to convert the real estate into money for the purposes of their trust,) to obtain the

direction of the court as to what ultimate disposition should be made of the proceeds after the death of the widow. This was a question proper to be raised and decided by the court to enable the executors to perform their duty. It was answered by the court, whether right or wrong, (presumptively it was right, since no appeal was taken by the heirs,) that the whole property, real and personal, was, under the terms of the will, converted into personalty; and that the whole of that portion as to which the testator died intestate must be distributed among the widow and next of kin as personal property, under the statute of distribution. The decisions are ample that such an adjudication, made in the construction of a will, is binding upon all parties in any litigation which may thereafter arise between any of them concerning any of the provisions of the will directly passed upon in construing the same. The general rule is well settled that a final judgment or decree of a court of competent jurisdiction is conclusive in every other suit between the same parties as to all matters and questions therein properly determined, or which might or ought to have been determined therein. *Doty* v. *Brown,* 4 N. Y. 71; *Demarest* v. *Darg,* 32 N. Y. 287: *Brown* v. *Mayor, etc.,* 66 N. Y. 391; *Chamberlain* v. *Taylor,* 105 N. Y. 185, 11 N. E. Rep. 625; *Leavitt* v. *Wolcott,* 95 N. Y. 222; *Chamberlain* v. *Chamberlain,* 43 N. Y. 424. Also that infants represented by a guardian *ad litem* are bound to the same extent as adults. *Walsh* v. *Walsh,* 116 Mass. 377; *Insurance Co.* v. *Schwaner,* 36 Hun, 373. That this rule applies to this case we think there can be no doubt. If so, the grandnephews and grandniece of testator are, much as we must regret the result, excluded from all participation in the fund solely by reason of the judgment in the suit for the construction of the will. Let it be conceded that they, as heirs at law of testator, immediately upon his death took, under the law, title as tenants in common with the nephews and nieces to that portion of the real estate as to which the testator died intestate, the fact still remains that a suit was properly brought, in which they were parties, and in which the question was squarely presented as to whether any portion of the estate as to which the testator died intestate should, upon a proper application of the rules of law applicable to the construction of the terms of the will, go to the heirs at law; and the court decided that the whole estate was by the terms of the will, under the circumstances, equitably converted into personalty, and must go to the widow and next of kin, and not the heirs at law.

The application of the doctrine of *res adjudicata* to cases involving the construction of wills is not a matter of reasoning alone. In the case of *Chamberlain* v. *Taylor,* 105 N. Y. and 11 N. E. Rep., *supra,* which was an action of ejectment from certain real estate which had passed under a will, the construction of which had been determined by the court between the same parties in a former action, brought especially for that purpose, (*Chamberlain* v. *Chamberlain,* 43 N. Y. 424,) the court say in substance that, as all the parties to this suit (ejectment) were before the court when the will under which the real estate passed was construed, neither party can now be heard, whether the judgment was right or wrong, to call in question the construction then given to the provisions of the will. See, also, cases of *Leavitt* v. *Wolcott, supra; Bowers* v. *Smith,* 10 Paige, 193. The case of *Bowers* v. *Smith* holds that, although the decision of legal questions, such as title to real estate in construction of wills, belongs exclusively to courts of law, yet such questions may, when they incidentally arise, or where the court has obtained jurisdiction for some other purpose, be conclusively determined upon the construction of wills in a court of equity. The case of *Demarest* v. *Darg, supra,* holds that the rule of *res adjudicata* applies, although the adverse parties were nominally defendants in suit in equity; since they have in such suit ample opportunity to assert their rights not only as against the plaintiffs, (executors,) but against each other. These considerations lead to a denial of

the right of the grandnephews and grandniece, as heirs at law of said deceased, to participate in the distribution of the fund.  Let a decree be prepared and submitted in accordance with the views herein expressed.