WILLIAM E. THORN, Appellant, *v.* HARRIET H. GARNER et al.,
Impleaded, etc., Respondents.

G. died, leaving an estate of over $4,000,000. By his will he bequeathed
to his son T. $1,000,000 to be paid within eighteen months after the
testator's death. There was no provision for the payment of interest on
this sum, or for the support of the legatee until it was paid. T. was at
the time about twenty-seven years of age, in delicate health, and had
always been supported by his father; he was not, however, absolutely
incompetent to transact any business, and was named as one of the execu-
tors. His fees as executor, had he qualified, would have been largely
in excess of any sum he had annually drawn from his father while living.
*Held,* that T. was not entitled to any interest on the legacy previous to
the expiration of the time fixed for its payment.
The business carried on by the testator had been conducted under the name
of G. & Co. The business was continued under the same name by W.,
brother of the legatee, and the acting executor. During the eighteen
months between the death of the testator and the payment of the legacy,
certain sums of money were paid to T., amounting to $164,000, nomi-
nally by G. & Co., but which were, in fact, payments on account of the
legacy. At the end of the eighteen months the balance of the legacy
was credited to T. as payment in full. *Held,* that no interest was prop-
erly chargeable on such advances.
Reported below, 42 Hun, 507.

(Argued March 7, 1889; decided April 16, 1889.)

CROSS-APPEALS from different portions of judgment of
the General Term of the Supreme Court in the first judicial
department, entered upon an order made December 18, 1886,
which affirmed a judgment entered upon the report of a
referee.

This action was brought by William E. Thorn, the sole
surviving executor of and trustee under the will of Thomas
Garner, Jr., deceased, to obtain permission from the court for
his resignation as executor and trustee, to have a new trustee
appointed and for a settlement of plaintiff's account. The
defendants, appellants, were the widow and daughter of
plaintiff's testator and the beneficiaries under his will. The
questions presented arose upon the accounting.

Plaintiff charged himself with the amount of a legacy given his testator under and by the will of his father, Thomas Garner, Sr .................................... $1,000,000
Less U. S. legacy tax........................     10,000
                                              _____
                                              $990,000

He credited himself: "By cash paid Garner & Co. for moneys advanced to Thomas Garner, Jr., during his life and before the legacy left him by his father's will was paid, $177,754.09."

The defendants, appellants, claimed that the moneys alleged to have been advanced by Garner & Co., which were $164,000; the balance of the credit, being interest, were, in fact, payments upon the legacy; that the legatee was entitled to interest on said legacy from the time of the death of the testator until payment thereof, eighteen months thereafter, and that such moneys should be applied in payment of interest and only the balance credited; also, that no interest was chargeable on the sums so paid.

The further material facts are stated in the opinion.

*Homer A. Nelson* for plaintiff. Thomas Garner was not entitled to interest on the legacy of $1,000,000 from the death of his father until it was paid. (*Bradner* v. *Faulkner*, 12 N. Y. 472; 2 R. S. 90, § 43; 6 Ves. 539, 540, 548; Id. 415; 6 Paige, 304, 305; *Green* v. *Belcher*, 1 Atk. 505; *Heath* v. *Perry*, 3 id. 101; *Hearle* v. *Greenbank*, Id. 695, 716; *King* v. *Talbot*, 40 N. Y. 76; *Brown* v. *Knapp*, 79 id. 136; Redf. Sur. Ct. 601.) The rule that legacies to a child draw interest from death of testator only applies to infant children. (*Cooke* v. *Meeker*, 36 N. Y. 18; *Ackerly* v. *Vernon*, 1 P. Wms. 783; *Hill* v. *Hill*, 3 Ves. & B. 183; *Miles* v. *Roberts*, 1 Russ. & M. 555; *Leslie* v. *Leslie*, Lloyd & Gould, temp. Sugd. 4; *Rogers* v. *Soutter*, 2 Keen, 598; *Wilson* v. *Maddison*, 2 Y. & C. 372; *Russell* v. *Dickson*, 2 Dru. & W. 1133; *Harvey* v. *Harvey*, 2 P. Wms. 21; *Incledone* v. *Northcote*, 3 Atk. 438; *Chambers* v. *Goodwin*, 11 Ves. 2; *Brown* v. *Temperley*, 3 Russ. 263;

*Hinnion's Exrs.* v. *Jacobus,* 27 N. J. Eq. 29; *Howard* v. *Francis,* 3 id. 445; *Miller* v. *Sanford,* 31 id. 427; *Raven* v. *Waite,* 1 Swanst. 557; *Wall* v. *Wall,* 15 Simon, 520; *Lowndes* v. *Lowndes,* 15 Ves. 301; *Brinckerhoff* v. *Merselis,* 24 N. J. Law, 680.) Where a settlement appears to have been final and all parties interested to have been before the surrogate, the presumption must be that the settlement embraced everything which was the proper subject of inquiry. (*Bk. of Poughkeepsie* v. *Hasbrouck,* 2 Seld. 216; *Brown* v. *Brown,* 53 Barb. 217; *Stiles* v. *Burch,* 5 Paige, 132; *Wright* v. *Trustees, etc.,* 1 Hoff Ch. 202; 3 Lans. 324; *Rose* v. *Lewis,* Gen. Term, 4th Dept. Nov. 1870.)

*Joseph H. Choate, Duncan Smith, J. Evarts Tracy* and *William V. Rowe* for defendants. The legacy given by the will of Thomas Garner, Sr., to his son Thomas Garner, Jr., bore interest from the testator's death. The situation of the son, the father's treatment of him, and the fact that he provided no other maintenance for him, by the will, show that this must have been testator's intention. (*Green* v. *Belchier,* 1 Atk. 505; *Heath* v. *Perry,* 3 id. 101; *Van Bramer* v. *Exrs. of Hoffman,* 2 Johns. Cas. 200; *Lupton* v. *Lupton,* 2 Johns. Ch. 614, 627, 628; *King* v. *Talbot,* 40 N. Y. 76, 91, 92; *Brown* v. *Knapp,* 79 id. 136; *Keating* v. *Bruns,* 3 Dem. 233; *Davison* v. *Rake,* 16 Atl. Rep. [N. J., Dec. 1888] 227; *Lowndes* v. *Lowndes,* 15 Vesey, 301; *Sullivan* v. *Winthrop,* 1 Summ. 1, 15; *Hearle* v. *Greenbank,* 3 Atk. 716; *In re Rouse' Estate,* 9 Hare, 649, 653; *In re George,* 5 Ch. D. 837; 47 L. J. Ch. 118; *Hennion* v. *Jacobus,* 27 N. J. Eq. 28–30. *Heath* v. *Perry,* 3 Atk. 101, 102; *Bowman's Appeal,* 34 Pa. St. 23; *Leech's Appeal,* 44 id. 140, 142; *Cox* v. *Corkendalls,* 13 N. J. Eq. 136, 140; *Brinckerhoff* v. *Marselis,* 24 N. J. Law, 680; *Morgan* v. *Pope,* 7 Coldw. 541, 549, 550; *Hart* v. *Williams,* 77 N. C. 426, 428; *Chisholm* v. *Chisholm,* 4 Rich. [S. C.] Eq. 266, 270; *Mc Williams* v. *Falcon,* 6 Jones Eq. 235, 236, 237; *In re Wood,* 1 Dem. 559, 567; *Howard* v. *Francis,* 30 N. J. Eq. 444, 448; *Raven*

v. *Waite*, 1 Swanst. 553; *Wall* v. *Wall*, 15 Sim. 513, 520; *Perry* v. *Whitehead*, 6 Ves. 546; *Russell* v. *Dickson*, 1 Con. & Law, 284, 290; 2 Dr. & War. 133, 141; 4 Ir. Eq. Rep. 339, 343.) Interest should at least have been collected on the $1,000,000 legacy, from the expiration of one year from the death of Thomas Garner, Sr., and accounted for by the plaintiff, with interest thereon. (2 R. S. 90, § 43; *Lawrence* v. *Embree*, 3 Bradf. 364, 366; *Campbell* v. *Cowdrey*, 31 How. Pr. 172; *Dustan* v. *Carter*, 3 Dem. 149; *Matter of Noyes*, 5 id. 309, 318, 319; *Davison* v. *Rake*, 16 Atl. Rep. 227; *Wheeler* v. *Ruthven*, 74 N. Y. 428, 431; *Marsh* v. *Hague*, 1 Edw. Ch. 174, 187; *In re Spencer*, 12 Atl. Rep. 124, 128.) The fact stated that the debts due the estate are not collected will not justify the decree that they were not collectible. That they were not must be shown by a proper statement. (*In re Jones*, 1 Redf. 263, 267; *Watts* v. *Jenkins*, 11 Barb. 546; *Bk. of Poughkeepsie* v. *Hasbrouck*, 6 N. Y. 216; *Brown* v. *Brown*, 53 Barb. 217; *Arnett* v. *Kerr*, 2 Rob. 556, 569; *Buck Estate*, 15 Abb. Pr. 12, 41; *Johnson* v. *Richards*, 3 Hun, 454.)

*Nathaniel S. Smith*, guardian *ad litem*, for infant defendants. Interest should not have been allowed on the legacy to Thomas Garner from the death of the testator to its payment. (*Bradner* v. *Faulkner*, 12 N. Y. 474; *Green* v. *Belcher*, 1 Atkyn, 105; *Heath* v. *Perry*, 3 id. 101; *Hearle* v. *Greenbank*, Id. 695; *King* v. *Talbot*, 40 N. Y. 77; *Brown* v. *Knapp*, 79 id. 141; *Raven* v. *Waite*, 1 Swanst. 557; *Lowndes* v. *Lowndes*, 15 Ves. 301.)

PECKHAM, J. On the 16th of October, 1867, Thomas Garner, a resident of the city of New York, died. Up to the time of his death he had carried on an extensive business in the manufacture and sale of cotton goods under the firm name of Garner & Co. By his will he gave and bequeathed to his son Thomas, plaintiff's testator, the sum of $1,000,000, to be paid to him within eighteen months after the testator's decease. The chief ques-

tion arising upon this appeal is, whether the legacy bore interest from the time of the death of the testator up to the time when it was paid, eighteen months thereafter. It has thus far been held that it did. We have come to a contrary conclusion. The statute prohibits the payment of legacies until a year after the granting of letters testamentary; and the general principle is that interest upon legacies is not payable until the principal becomes due. If interest be allowed before that time, without a specific direction in the will, it constitutes an exception to the rule, and is founded generally upon certain facts which the courts have agreed are equivalent to an express direction in the will to pay interest, because, from such facts, the courts will presume an intention on the part of the testator to have it paid. (*Bradner* v. *Faulkner*, 12 N. Y. 472; *Cooke* v. *Meeker*, 36 id. 18; *Brown* v. *Knapp*, 79 id. 136.) The fact that the legacy was payable to an infant child, or to an infant towards whom the testator had stood in *loco parentis*, such as a grandchild, and that there was no other provision made in the will for the maintenance of such legatee, has been regarded by the courts as a fact sufficiently indicative of the intention of the testator to authorize payment of interest from his death, although such direction was not found in the will. (Cases cited *supra*.) The widow and daughter of the deceased legatee in this case claimed that there were facts existing which showed that it was the intention of the testator that the legacy should draw interest from the time of his death. It cannot be disputed that if such were his intention, it is the duty of the court to carry it out. As there was no specific direction in his will to pay interest, the claim that, nevertheless, it was the intention of the testator that it should be paid from the time of his death, is founded upon the statement that the legatee, although at the time of the death of the testator a man twenty-seven or twenty-eight years old, was yet in poor health, unable to support himself, and that from his birth up to the time of the death of the testator he had been wholly supported by such testator, and that the legacy was, of course, given to him for his support and maintenance, and on

account of these facts it was intended by the testator to bear interest from the time of his death; that it could not have been his intention that his son, the legatee, should have no fund to resort to for his support for eighteen months after his death.   The learned counsel for the widow and child of the legatee admitted, and very properly, that the mere fact that a legacy is given for the support, in express terms, of an adult child, is not sufficient to rebut the presumption which exists against an adult that he is able to support himself for the first year, and that, therefore, the support referred to in the particular case must be what is ordinarily understood as support after the first year in accordance with the usual practice.   But he claims that the rule is altered when the additional fact is found that on account of the ill health of the legatee, in this case, he was unable to support himself during that year, and that he had no other means of support than the legacy given him by the will of his father.   We have looked at all the cases cited by the counsel upon this question, and we find none where it is held that interest upon a legacy is payable from the death of the testator where the legacy was given to an adult.   In *Mc Williams* v. *Falcon* (6 Jones' [N. C.] Eq. 235), the interest was directed to be paid annually for the sole and separate use of the testator's mother, and the legacy was demonstrative and the fund productive.   In *Hart* v. *Williams* (77 N. C. 426), the legatee was a freedman.   The legacy was a pecuniary one, and, so far as I can understand from the case, interest was allowed commencing a year from the death of the testator. In *Morgan* v. *Pope* (7 Coldw. [Tenn.] 541), interest, in fact, was allowed commencing a year from the testator's death. We think there is not enough in this case to show that the intention of the testator (which, as all agree, is the controlling element) was that interest, from the time of his death, should be paid upon this legacy.   The legatee, although in delicate health, was not, as the case shows, absolutely incompetent to transact any business.

He was a gentleman of leisure; traveled considerably; bought land and built or repaired a house, and clearly was

able to be out and to give some little attention to business for at least a portion of the time, had he so desired. It is true his father had always supported him; but it is equally true that his father knew the condition of his son's health, his capacity for business and his general ability to transact it, and, with such knowledge, made him one of the executors of his estate. The testator was a man of experience, engaged in large business enterprises and a man who had made an immense fortune, stated in the case to have been at the time of his death, between four and five millions of dollars. From the time his son became of age he had given him a salary, nominal in amount, and allowed him to draw for sums far in excess of the amount of his salary. These were charged upon the books of the testator as against the salary account, and the balance charged to profit and loss. To such a man the question of interest was, necessarily, an important one. It was, of course, present to his mind, and it cannot be supposed that if he had intended interest should be paid from the time of his decease, his will would have been silent upon that subject. The language of Gardiner, Ch. J., in *Bradner* v. *Faulkner* (*supra*), upon the same subject, is very apt here. " In addition to " these considerations we have the strong negative evidence " of the intention of the testator in his omission to provide " that this legacy should draw interest from any period. He " was aware that there was to be an interval between his death " and the receipt of this bequest by the beneficiary, should his " executors comply literally with his injunctions. The amount " (of the legacy) was large, and the interest, even for a few " months, too considerable to escape the attention of a man in " the habit of making investments and realizing interest upon " them, as the inventory of his estate proves to have been the " case with the testator. That he, as a man of business, " should make no provision for interest, under these circum- " stances, is presumptive evidence that, in his own opinion, " the advantages of his daughter in the disposition of his " property, could be, and were equalized without it." * * * " It is enough that the matter (of the payment of interest) is

"left in doubt. Plaintiff can rely on the general rule that "no interest accrues until the legacy was payable. The bur-"den is upon those who claim it, to show a clear intent that "interest should be paid from the time of the death of the tes-"tator, notwithstanding his silence on the subject. This has "not been done. We are not authorized to speculate as to "his intention, or to add to the will by mere conjecture." Before the death of his father, so far as appears from the evidence, the legatee had never drawn as much as $15,000 a year; but by his appointment as one of the executors of this estate he had but to qualify, or, in other words, to do what his father by such appointment desired that he should do, and his fees as executor would have been largely in excess of any sum he had annually drawn from his father while living. It may very well be that the testator appointed him executor for the very purpose of enabling him to earn such fees and to place him, in some degree, upon an equality (in the management of the estate, at least) with his younger brother William T.; and, in addition, the fact that he was executor would enable him to pay himself the amount of the legacy bequeathed to him at the earliest possible moment consistent with the proper administration of the estate. If it were admitted that the rule has been correctly stated by the counsel for the widow of the legatee, we yet hold that this case does not fall within the most liberal construction of that rule, because it is evident from the facts that the legatee had but to qualify as executor of the will of his deceased father to put himself in a position to earn, with very slight effort, far more in the course of a year than he had ever received from his father while living in the same length of time, and also because by virtue of his position as executor he could have paid the legacy to himself, as above stated. These facts, together with the absence of any direction in the will to pay interest, seem to us to be conclusive against any such intention having existed in the mind of the testator when he executed the will.

What has already been said disposes of the claim made by the counsel for the widow of the legatee, that in any event interest upon the legacy is payable at the expiration of the year from the death of the testator. By the terms of the will it was not due until eighteen months from the time of the testator's death, and the cases cited by the learned counsel, in relation to interest being payable at the expiration of the year, do not apply. The interest charged against plaintiff upon the legacy for eighteen months, and the interest on that sum, must, therefore, be stricken from the account.

The next question arising is whether the interest amounting to $13,198.95 upon certain alleged advances of Garner & Co. to the legatee is properly charged? We think plainly not. By the system of bookkeeping adopted, it appeared that during the eighteen months which elapsed between the death of Thomas Garner, Sr., and the payment of the legacy of $1,000,000, certain sums of money, amounting to one hundred and sixty-four thousand and some odd dollars, were paid to the legatee by Garner & Co., and interest upon those payments was charged from the time of each payment until the repayment by the plaintiff after the receipt of the million dollar's legacy. In truth, there were no such advances and no such interest. The whole thing was a mere matter of bookkeeping. Garner & Co. consisted simply of William T. Garner, the brother of the deceased legatee and the executor of his father's will, and the payments made to the legatee, nominally by Garner & Co., were payments on account of the legacy to such legatee by William T. Garner, the executor, and during that eighteen months they amounted to the sum above mentioned. At the expiration of the eighteen months the balance of the million dollars became due and was credited on the books to the legatee as a payment in full of that amount, deducting therefrom the internal revenue tax. The payments actually made being made in truth by William T. Garner on account of the legacy, no interest on those alleged advances by Garner & Co., which was simply another name for William

T. Garner, could properly be charged; and that sum should be deducted from such alleged payments.*

\*        \*        \*        \*        \*        \*        \*

The decree of the court below should be modified in conformity with the views expressed here, and as modified affirmed, with costs to all the parties payable out of the fund.

All concur.

Judgment accordingly.

---

*The omitted portion of the opinion treats of small items in the account and presents nothing of general interest.