Cocks, his brother, became administrator of his estate. After the death of the testator, his executors set on foot an investigation in regard to this real estate, and found that the records of the title had been destroyed at the time of the great Chicago fire, and that the land had been sold for taxes. They paid $3,000 to redeem it, and commenced proceedings for its recovery, at a cost of $1,000 more. Then a compromise was affected; each of the five children conveying his or her interest to the claimant for the sum of $800. This simply equaled the amount of the expenditure. David thus received his share of the purchase money, as is stated; but Mrs. Haviland refused to join in the conveyance. It is assumed that the law of Illinois and our own are the same on the subject of descent, and that the testator inherited the real estate, and died seised. It was therefore a part of his estate, and has not been conveyed by the executors as such. David has a right to convey his life-interest, subject to the exercise of the power by the executors; but he could not convey the remainder. If there is any just claim of his children now, the title is vested in them, subject only to the exercise of such power. This power the surrogate's court cannot compel them to exert. At all events, Mrs. Haviland did not concur in the sale of his interest, nor in any way receive any of the proceeds. Should the assumption in regard to the law of descent in Illinois prove to be erroneous, it is not discovered how it would affect her liability. It follows from the facts and views expressed that no responsibility is fixed upon her beyond that which was determined by the decree of November, 1887.

---

### In re PECK'S ESTATE.

#### (Surrogate's Court, Westchester County. March 29, 1890.)

LEGACY TAX—PRESENT VALUE OF LEGACY.

Laws N. Y. 1887, c. 713, § 1, subjects the estate bequeathed to any person or corporation, not exempt, to a tax of five per cent. of its value, "provided that an estate which may be valued at a less sum than $500 shall not be subject to such duty or tax." By section 4 the tax is made due and payable at the death of the decedent. By section 13 the appraiser is required to appraise such property at its fair and market value, and on his report the surrogate must assess and fix the then cash value of the same. *Held,* that a bequest of $500 to a corporation, not being payable until the end of one year, was not of the cash value of $500, and therefore not subject to the tax.

Sarah E. Peck bequeathed $500 to the Board of Home Missions of the Presbyterian Church in the United States of America, and $500 to the Board of Foreign Missions of the same church. The question presented is whether these legacies are subject to taxation under the collateral inheritance act.

*F. B. Chedsey,* for Thomas B. Peck, executor. *John E. Parsons,* for Board of Home Missions.

COFFIN, S. The first question to be considered is whether the bequests of $500 are subject to the tax. By the first section of the act (chapter 713, Laws 1887,) it is provided that the estate bequeathed to any person or corporation, not exempt, "shall be and is subject to a tax of five dollars on every hundred dollars of the clear market value of such property; * * * provided that an estate which may be valued at a less sum than five hundred dollars shall not be subject to such duty or tax." By the fourth section the tax is made due and payable at the death of the decedent. By the thirteenth section the appraiser is required to appraise such property as is bequeathed at its fair and market value, and on his report the surrogate must assess and fix the then cash value of the same. Now, it has been finally settled, after many conflicting decisions, by the case of *Thorn* v. *Garner,* 113 N. Y. 198, 21 N. E. Rep. 149, that a legacy, not sooner payable, and not given for support, will draw interest only from a year after the date of the letters testamentary. It certainly seems very clear that such legacies as are here bequeathed, payable at

the end of one year, are not of the fair market or cash value of $500 each. No
business man would so regard them. Each would be of the value of the
amount less the interest until payable. Suppose a testator were to bequeath
the same sum to a person not exempted from the tax, payable at the end of
five years from decedent's death. It certainly would not, for the purposes of
taxation, be assessed at a market or cash value of $500. One of the learned
counsel has aptly likened the case to that of a promissory note made payable
one year from date. Its cash value would be the amount less interest, say
$475. There is now pending before me a will wherein a bequest of $2,500 is
made to a person whose legacy is subject to the tax, payable in four equal
semi-annual installments, the first payment to be made six months after the
death of the testator. It is perfectly apparent that the clear market value of
the legacy is less than $2,500. The proposition seems too plain for argument.
It must, therefore, be held that the legacies in question are not subject to tax-
ation under the act; and it would thus appear that the view expressed in *Re
Jones*, 5 Dem. Sur. 30, to the effect that cash legacies require no appraisal,
requires some modification. Jared V. Peck, a brother of the testatrix, was
bequeathed the income for life of a sum amounting to about $33,000. At his
death it is given, in taxable shares, to persons whose interests are subject to
the tax. The questions are presented as to whether the tax on these shares
shall be paid out of the principal fund, or by the legatees in remainder, on
their failure to give bonds as provided by section 2; and, if such bonds shall
not be given, how can payment be enforced? The parties in interest do not
seem to be before me in such an attitude as to warrant a determination of
these questions in such manner as would be binding upon them, or to enable
me to make a decree on the subject that could be enforced. When the matters
shall be properly presented, doubtless a mode of coercing payment may be
found.

---

## *In re* GALL'S WILL.

### *(Surrogate's Court, Kings County.* April, 1890.)

NON-CEREMONIAL MARRIAGE.
Upon an issue whether a non-ceremonial marriage between decedent and A. had
been consummated between April 3, 1883, when the former executed his will, and
April 28, 1884, when he executed a codicil, there was evidence that in 1883 A. was
a servant in decedent's employ; that an illicit intercourse was then commenced be-
tween them; that in January, 1884, decedent placed her in a tenement house in New
York city, where a child was born, while he took a suite of rooms at an hotel in the
city; that during this period the codicil was executed, leaving a legacy to A., by
her maiden name, and also one to the child, giving it his own name; and that dur-
ing this time decedent did not hold her out as his wife. There was also evidence
that decedent called A.'s mother his mother prior to the making of the codicil, and
that he bought a house about the time the codicil was executed which he said was
for "his family," or "for his wife and family." His business partner testified that
on April 24 or 25, 1884, decedent stated to him that his social standing, and the ig-
norance of the girl, would not admit of his marrying her at that time. *Held*, that
on April 28, 1884, the parties had not passed, by mutual consent, from a state of
illicit intercourse into that of marriage.

Application for the probate of the will and codicil of Joseph Gall, deceased.
*Geo. B. Morris*, for proponent. *A. Simis, Jr.*, for Amelia Gall, the widow.

ABBOTT, S. Joseph Gall died on the 22d day of May, 1886. Two months
afterwards the suit of *Gall* v. *Gall* was commenced in the supreme court,
Kings county; the plaintiff claiming dower in the real estate of Joseph Gall,
deceased, as his widow. This action resulted favorably to the plaintiff, and
the judgment was affirmed by the general term and court of appeals, (*Gall* v.
*Gall*, 114 N. Y. 109, 21 N. E. Rep. 106,) and settled the fact that an uncere-
monial marriage had been entered into between the parties, without fixing
the time when such marital relation commenced. In this proceeding the