# 𝕮𝖆𝖘𝖊𝖘

# THIRD DEPARTMENT

AT

# GENERAL TERM.

## 𝔇𝔢𝔠𝔢𝔪𝔟𝔢𝔯, 1891.

IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNTS OF OTIS G. CLARK AND ANOTHER, AS EXECUTORS AND TRUSTEES OF NICHOLAS S. VEDDER, DECEASED.

*Will — interest on a legacy to one to whom the testator stands in* loco parentis *— what is covered by "income and profits" — conversion into realty — res adjudicata — remaindermen, when not bound by a decree.*

One Vedder, who died in 1879, by his will, executed in 1867, gave his wife a life estate in all his property, and bequeathed certain legacies, among others one to Fanny A. Mann for $5,000, and one to Martha Mann for $3,000. By a codicil, executed in June, 1875, he canceled these bequests, and gave in place thereof a legacy of $8,000 to Ida A. Vedder. In September, 1875, Ida A. Vedder was apprenticed to the testator and his wife until she should arrive at eighteen years of age, by an indenture made with the American Female Guardian Society, which stated that it was intended that the said Ida should be taken, as far as practicable, into the family as an adopted child. She was then four years old, and was treated in accordance with the provisions of the indenture of apprenticeship during the testator's life, and from the time of his death until the death of his widow, in June, 1890, she was educated and supported by the widow as a daughter. Ida A. Vedder had no estate of her own.

Upon an appeal from a decree settling the accounts of the executors and trustees of the testator:

*Held,* that the legacy was not given to Ida A. Vedder for maintenance, and that she was not entitled to interest thereon during her minority.

That the fact that the income of the whole estate was given to the widow clearly showed the intention of the testator to be that the legacy should not bear interest, and that this view was sustained by the fact that the two legacies, in place of which the legacy was given to Ida A. Vedder, were given to sisters of the testator's wife, who would not in any event be entitled to interest.

The cases relative to claims of this nature reviewed.

That a provision in a will giving to a widow for life the "income" and "profits" of all the testator's estate did not entitle her to a premium realized by the executors upon a sale of the securities of the estate.*

The will of the testator gave his executors power to sell his real estate, but did not direct them to do so. In 1880 a decree was entered in an action brought by the executors for a construction of the will, to which two grand-nephews and a grand-niece of the testator, appellants here, were parties, which, among other things, adjudged that the whole estate must be treated as personal property, and also that two gifts to charitable and religious corporations were void so far as they exceeded one-half of the gross amount of the estate of the testator; that, in such excess, the widow was entitled to a life estate, and that after her death it passed to the next of kin. It appeared that the personal estate of the testator was sufficient to pay all the legacies, including the half to which such corporations were entitled.

*Held*, that the said grand-nephews and grand-niece, claiming as heirs-at-law, were not concluded by said decree as to their rights in the real estate of the testator included in said excess.

That said real estate undisposed of vested at once (subject to the life estate of the widow) in the heirs-at-law.

That while it was doubtful whether the executors had power to sell said real estate, the heirs at-law by coming in and claiming the avails thereof ratified the sale.

That the action of 1880, relating solely to the duties of the executors and probably unauthorized, since the will imposed no duties upon the executors in the way of a trust, did not affect the rights of the next of kin in the real estate comprised in the excess, nor in the avails of said real estate.

That the decree, in any view, was valid for its own proper purpose and object, and only to that extent.

APPEAL by Simon F. Mann, as executor of the will of Nancy A. V. Hartshorn, deceased, and late temporary administrator of her estate, from so much of a decree entered in the office of the surrogate of Rensselaer county on the 20th day of July, 1891, as directs and adjudges:

*First.* That the representatives of the estate of Nancy A. V. Hartshorn are not entitled to demand and receive the sum of $10,220.86, or any part thereof, as income and profits of the estate of the deceased testator which would go to the widow under the will of said testator.

*Second.* That the expenses of administration, including the fees of executors and expenses of this accounting, amounting to the sum of $3,556.10, are not, nor is any part thereof, chargeable against that

---

See *Duclos* v. *Benner, post,* page 428.

portion of the estate in which the Troy Orphan Asylum and the trustees of the Troy Annual Conference are entitled to share, but are chargeable on and are to be paid out of the intestate estate of the said Vedder in which his widow and next of kin are entitled to share under the statute of distributions.

*Third.* From the portion thereof which directs the distribution of the sum of $9,089 65, according to the proportions and sums as in said decree stated.

*Fourth.* From so much thereof as adjudges and decrees that the expenses of administration and of the accounting, including the fees of executors, should be paid out of the intestate estate, and that no portion thereof should be charged upon the legacies bequeathed to the Troy Orphan Asylum and the trustees of the Troy Annual Conference.

An appeal by said Mann, as executor as aforesaid, from so much of said decree as adjudges and decrees that the decree of the Surrogate's Court in this matter, dated January 11, 1882, and the further decree in the same matter, dated February 25, 1889, were valid and effectual for the determination of the matters in said decrees pretended to be decided, and that such decrees were at the time of the entry of the decree appealed from in this matter, in full force and effect.

An appeal by Ida A. Vedder (one of the legatees named in the last will and testament of Nicholas S. Vedder, deceased), by William Lord, her special guardian, from so much of said decree as directs and adjudges that Ida A. Vedder is not entitled to demand and receive from the estate of said deceased interest upon a certain legacy to her in said will of $8,000, from the death of testator to the death of Nancy A. Hartshorn; and, also, from so much of said decree as adjudges and decrees the ownership and distribution of the balance of $21,254.10, which is set forth in the summary statement in said decree.

An appeal by Willard K. Brooks, Walter P. H. Brooks and Belle Smith from so much of said decree as adjudges and decrees that said Willard K. Brooks, Walter P. H. Brooks and Belle Smith are concluded and bound by the judgment of the Supreme Court, mentioned in said decree, and are not entitled to share as heirs-at-law in that portion of the testator's real estate as to which, according to

the said judgment, the said Vedder died intestate, or in any part thereof; and, also, from so much of said decree as adjudges that the only next of kin of the said Vedder who are entitled to share in his estate are Gertrude Van Alystyne, Gertrude Shufelt, Sarah Carpenter, Catharine Phillips, Eliza Luke, Mary Sagendorf, Peter Van Guysling, Nicholas Van Guysling and Daniel V. Brooks. And, also, from every portion and part of said decree by which any persons other than the said Willard K. Brooks, Walter P. H. Brooks and Belle Smith are adjudged to be entitled to the share or proportion of the real estate of said Nicholas S. Vedder, deceased, as to which he died intestate, which, under the statutes of this State, would have descended to the said Willard K Brooks, Walter P. H. Brooks and Belle Smith, as three of the heirs-at-law of the said Nicholas S. Vedder, deceased.

*Seymour Van Santvoord*, for N. A. Vedder, appellant.

*Matthew Hale*, for Willard K. Brooks and others, appellants.

*Robert H. McClellan*, for Simon F. Mann, as executor, appellant.

*Martin I. Townsend*, for Otis G. Clark, executor, respondent.

*Edwin A. King*, for the Troy Orphan Asylum, respondent.

*John H. Peck*, for the Troy Annual Conference, respondent.

*W. L. L. Sanders*, for John E. Cary and others, respondents.

*Horatio G. Glen*, for Catharine M. Phillips, respondent.

LEARNED, P. J.:

This matter comes here by appeal from an accounting before the surrogate. There are three separate appeals and five separate respondents.

Ida A. Vedder appeals and claims interest on a legacy of $8,000 left to her.

Willard K. Brooks and others appeal. They claim certain interests in real estate as heirs-at-law, not next of kin, which estate has been sold.

Simon F. Mann, executor of the widow (who afterwards married one Hartshorn), and who was entitled to income, appeals, claiming

the benefit of a certain increase in securities, and also as to the application of the costs.

Some of the respondents oppose all of these appeals, others all but that of Willard K. Brooks and others.

First, as to the appeal of Ida S. Vedder:

The deceased died in 1879. By his will, executed July 25, 1867, he gave his wife a life estate, and, after her death, certain legacies, among them: Fourth. To Fanny A. Mann, $5,000. Ninth. To Martha Mann, $3,000; with a contingent bequest to others.

By a codicil, executed June 5, 1875, he canceled these two bequests, describing them, and then declared: "And in place and stead thereof, I give and bequeath the sum of eight thousand dollars, being the sum of said two former bequests to my adopted daughter, Ida A. Vedder."

On the 11th of September, 1875, the testator and his wife executed an indenture with the American Female Guardian Society, by virtue of which said Ida was apprenticed to them till she was eighteen. It was stated, however, therein, that it was intended that said Ida should be taken, as far as practicable, into the family as an adopted child. She was then four years old. She was treated as an adopted child during the life of the testator. From his death down to the death of his widow, June 8, 1890, Ida was educated and supported by the widow as a daughter, and in correspondence with the situation in life of the said widow. It is not shown that Ida had any estate of her own except this legacy.

She now claims that it is presumed that the legacy was given for maintenance, and, therefore, that it draws interest from testator's death.

The question in such cases is what did the testator intend, ascertained by what he said and the surrounding circumstances. When courts say that the testator must have been presumed to mean what he did not say, they are groping in the dark and making, instead of construing, a will. This testator need not have given any legacy to Ida. He was at liberty, also, to say when the legacy which he did give should be paid. He was not obliged to say that she should have the interest meantime. And he did not say so. On the contrary, he gave all the income and profits of his estate to his widow (excepting such property as he had previously bequeathed to her

absolutely). Therefore, he could not have intended that any of the income should be paid to Ida for maintenance. For, if interest on the legacy was to be paid to her for maintenance, it would have to be paid every year. It would be absurd to say that for the purpose of maintenance an accumulation of interest should be paid to Ida after the death of the widow. But the interest on the legacy could not be paid to Ida every year, because all the interest on the whole estate was to be paid to the widow. It is practically the same as if the will had directed the executors to set apart $8,000, to pay the interest thereon to the widow during her life, and at her death to pay the principal to Ida. It would hardly be presumed, under such a bequest, that the testator intended to give to Ida that which he had expressly given to the widow, viz., the interest. In the present case the testator gave to the widow for life all the income, including that arising from the $8,000, ultimately bequeathed to Ida. Thus he shut out the construction for which Ida contends.

Let us suppose that the testator had given the income of his whole estate to his widow for life, and after her death the whole estate to Ida. According to the argument urged on us, as the testator stood in the place of a parent to Ida, the legacy was for maintenance. Therefore, she must have the interest on the bequest from his death. Hence, the widow would have no income whatever. That is but pressing the rule contended for to its legitimate result. If Ida can deprive the widow of a part, why not of the whole income? For it is the right to interest, not to principal, which is asserted.

Again, by the will, two legacies were to be given to the testator's wife's sisters, amounting to $8,000. Certainly these legacies did not carry interest, even by the most violent presumption which could be indulged in. And, therefore, unquestionably, there was, under the will, no deduction to be made from the income of the widow to pay interest on these legacies. The codicil only cancels these legacies and gives "the sum of said two former bequests" to Ida. Hence, she would not receive any more than those legacies, and, clearly, would not be entitled to interest.

Again, although the codicil is dated a short time prior to the indenture of adoption, yet the codicil speaks of Ida as "my adopted daughter." It is reasonable to suppose that the arrangement carried out by the indenture had already been made at least verbally.

And at any rate, long before the will and codicil took effect, the indenture of nominal apprenticeship, but practical adoption, had been executed by the testator and by his wife. He had a right, then, to expect that Ida, who must have been about eight at his death, would, at least, till she was eighteen, the age mentioned in the indenture, be cared for by the widow, who was herself a party to the indenture. (*Van Bramer* v. *Hoffman*, 2 Johns. Cases, 200.) Such expectations, if he had them, were fully realized. Ida must have been nineteen at the death of the widow, and up to that time she had been maintained and educated as a daughter. If a father gives his property to his widow for her life with remainder to his children, it must be supposed that the children would be supported by the widow. And that is the thought which the testator must have had in this case.

These views leave us no reason to doubt what the testator, in fact, intended. It is urged, however, on behalf of Ida, that an established rule of construction compels us to disregard his plain intention, and to assume that he meant something else. As is said in *Thorn* v. *Garner* (113 N. Y., 202), there are " certain facts which the courts have agreed are equivalent to an express direction in the will to pay interest, because from such facts the courts will presume an intention on the part of the testator to have it paid." In *Bradner* v. *Faulkner* (12 N. Y., 472) it was said that in the absence of express direction the intent of the testator to authorize the payment of interest should clearly appear.

The case of *Cooke* v. *Meeker* (36 N. Y., 15), held that where the testator gave a sum of money to a trustee, in trust, to invest in bond and mortgage, and apply the income to the use of his grand-daughter during her natural life, the grand-daughter was entitled to the interest from the testator's death. That is a case quite different from the present. The legacy was expressly for use during life. The opinion contains numerous English cases on this point. In *Brown* v. *Knapp* (79 N. Y., 136), the will was as follows: " I give, devise and bequeath to my grandson  *  *  *  the sum of $3,000, and direct my executor  *  *  *  to pay to him the said sum when he shall attain the age of twenty-one years." There was a gift over, if he should die before twenty-one. The residue, after legacies,

was given to his son. It was held that this legacy carried interest; the grandson being about seven at the testator's death. Here there was a distinct setting apart of $3,000; no provision as to what should be done with the income; and the time of paying over was at maturity. It was inferred that the infant was to have the benefit during his minority.

In *Keating* v. *Bruns* (3 Dem., 234), property was given to trustees to pay the income to an adopted daughter. It was held that she ought to have the income during the year succeeding the testator's death. The will provided for the disposition of the principal fund after the death of the beneficiary. But it does not appear that the income was disposed of in any way except for the use of the beneficiary.

In *Neder* v. *Zimmer* (6 Dem., 180), the gift was of money in a savings bank to three children, each to have his share when he arrived at twenty-one. It was held that the children were severally entitled to the interest.

Now, without citing other cases, it will be seen that the principle seems to be applied when it is in harmony with, or not in violation of, the provisions of the will. The cases cited were unlike the present. And we think that the principle does not apply. (*Lyon* v. *Indust. Assn.*, 52 Hun, 359.) The surrogate was right.

The next question we consider is that presented by the executor of the widow. The personal securities held by the executors of the testator were sold by them after the death of the widow. A premium of $8,659.63 was received therefor in excess of the premium at which securities had been charged in the previous decree of 1882. Her executors claim this as income to which the widow was entitled.

The will rather tautologically gives the wife " the income of all my other estate, both real and personal," and again in the same item " the profits of all my other estate, both real and personal." But there is no difference in the meaning of the words. In the next item he gives, after his wife's death, " the income and profits " of $10,000 to Anna Van Geysling during her life, using thus the same language. Then he disposes of the whole of his estate. This use of the words " income and profits " is only due to the lawyer-like fondness for using several words where one is sufficient. If the executors had not sold the real estate, and if the real estate had increased in value

during the widows's life she would not have been entitled to the increase. So with personal property. This question is carefully discussed and fully settled in *Matter of Gerry* (103 N. Y., 445). We think that the use of the word "profits" in these items of the will has no additional meaning to the words construed in that case. The decision of the surrogate was correct.

The remaining question is that on the appeal of Willard K. Brooks and others, grand-nephews and a grand-neice of the testator. It has been held in an action in this court that the gifts, after the death of the widow, to the Troy Orphan Asylum and the Troy Conference, under the statutes of the State, were void, so far as they exceed one-half the testator's estate; and that as to such portion, the deceased died intestate except as to the widow's life estate. (Laws 1860, chap. 360.) No dispute is made as to the law in this respect. These appellants claim nothing as to the personal estate. (2 R. S., m. p. 96, § 75.) But they claim, as heirs-at-law, their share of the real. (1 R. S., 752, §§ 8, 9.) The personal estate was enough to pay all the legacies, including the half to which the aforesaid corporations are entitled.

There was in the will an authority, but not a direction, to sell real estate. Nor is the purpose of such authority expressed in the will. It could only be for the purposes of the will. (*Wood* v. *Cone*, 7 Paige, 471.) There was no purpose of the will for which such sale was needed. There was, therefore, no conversion of the real into personal property. A discretionary power produces no such effect. (*White* v. *Howard*, 46 N. Y., 162; *Chamberlain* v. *Chamberlain*, 43 id., 431; *Chamberlain* v. *Taylor*, 105 id., 185.) The real estate (subject to the life interest therein of the widow), so far as it was undisposed of, vested at once in the heirs-at-law. The gift of the income to the widow gave her a life estate in the land. (1 R. S., m. p. 727 § 47) She was not the mere beneficiary of a trust in respect to the land, but had the estate. And the undisposed of remainder vested in the heirs-at-law. It may be doubted whether the power of sale existed in respect to this land as to which the testator made no devise. (1 R. S., m. p. 730, § 67; 734, § 102; *Chamberlain* v. *Taylor, ut supra.*) It is not necessary to decide that question here; since these heirs-at-law by coming in and claiming a share of the avails practically ratify the sale of the

executors. But we are satisfied that these heirs are entitled to their share of the avails, unless they are deprived thereof by a previous decision of the court. An action was heretofore brought by the executors for the construction of the will. To that action these heirs-at-law were parties. In the judgment entered in that action June 11, 1880, it was, among other things, adjudged that the will provided for the conversion of the real into personal property, and that the whole estate must be considered and treated as personal property. The next of kin of the testator now claim that that judgment establishes their right to this undisposed of share of the estate, and estops these heirs from their legal rights.

Now that action was solely for the instruction and aid of the executors. So far as this share of the real estate was concerned, they had no duties under the will, for it was not disposed of thereby. We have seen that it is even doubtful whether this power of sale extended so far.

In *Rathbone* v. *Hooney* (58 N. Y., 463) there had been a foreclosure to which one Mr. Brown was a party defendant. Mrs. Brown held an interest in the estate as trustee for Maria Rathbone's life, and also in her own right as remainderman, and she had executed a mortgage. Her own estate she could mortgage; the trust estate she could not. It was held that, though the judgment in foreclosure cut off her own estate, it did not cut off the trust estate. The court said that " that judgment was final for its own proper purpose and object, and no further ; " and that Mrs. Brown " was not bound to set up her claim as trustee, when made a party to the foreclosure, in the absence of any averment in the complaint in respect to that interest or claim, that it was subject to the mortgage."

The proper object of such a suit has been passed upon — *Bailey* v. *Briggs* (56 N. Y., 407); *Dill* v. *Wisner* (88 id., 153) and lately, by this General Term, in *Avery* v. *Mabey*, December, 1891. It can be maintained when the executors have some duty in the way of a trust. As to the real estate now in question the executors had none.

And it will be seen that the judgment is general in its terms, stating that the " excess " over one-half of the gross amount of the estate goes to the next of kin. It is not questioned that this is correct as to the personal property. And nothing appears in that judgment as to the amount of either real or personal.

There is no doubt as to the rule of *res adjudicata*. The only question is, whether, in such an action as that above mentioned, brought for the construction of the will in respect to the duties of the executors, these heirs-at-law are bound by the statement that the "excess" goes to the next of kin. On the whole consideration of the question we are of opinion that they are not.

Some question is made as to the discretion of the surrogate in charging executors' fees and expenses of accounting. He directed that these items should not be charged against the portion of the estate in which the Troy Orphan Asylum and the Troy Conference were entitled to share, but against that portion in which the widow and next of kin are entitled to share. As we have taken the view that the avails of the real estate go to the heirs-at-law, there must be a modification of the surrogate's decree after an ascertainment by him of the amount of those avails. This may render a new adjustment of costs necessary, since the heirs have not been heard upon that point. We think it best, therefore, to say nothing upon the question of costs.

The decree must be affirmed, except so far as it adjudges that the avails of the real estate be distributed among the next of kin, in which respect it must be reversed and the matter sent back to the surrogate to ascertain the amount of such avails and to provide for the payment thereof among the heirs. The question of the charging the costs and executors' fees will, of course, be open to such readjustment as the surrogate may make in view of these new interests.

The appellants, Brooks and others, will be entitled to costs of this appeal against the next of kin and the executor of the widow.

The respondents, the Troy Orphan Asylum, the Troy Conference and executors, will be entitled to costs of this appeal against Ida A. Vedder.

The respondent Clark, executor, will be entitled to costs of this appeal out of the estate.

This order may be settled before MAYHAM, J.

MAYHAM and PUTNAM, JJ., concurred.

Decree affirmed, except so far as it adjudges avails of real estate to next of kin, in which respect it is reversed and matter sent back to surrogate to ascertain of such avails and to provide for payment of

same among the heirs. The question of the charging the costs and disbursements must, therefore, be left open for readjustment. The appellants, Brooks et al., are entitled to costs of this appeal against the next of kin and the widow. The Troy·Orphan Asylum and the Troy Conference are entitled to costs of this appeal against Ida A. Vedder. Clark, trustee, etc., is entitled to costs of this appeal out of the estate.