### In re GANS' WILL.

#### HACKES et al. v. FRANKHEIMER et al.

(Supreme Court, Appellate Division, First Department. February 5, 1909.)

1. WILLS (§ 806*) — ABATEMENT—TESTAMENTARY DIRECTIONS—CONSTRUCTION— "TOTAL ESTATE."

A will provided that legacies should be paid in full in case testator's total estate amounted to $300,000, but, if less than that sum, the legacies should abate in proportion. *Held*, that by "total estate" only such property as was left after the payment of debts and funeral and testamentary expenses was meant.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2102; Dec. Dig. § 806.*]

2. WILLS (§ 479*)—CONSTRUCTION OF WILL—POWER OF EXECUTORS.

Though executors have discretion in estimating the amount that would be realized in converting testator's estate into money for distribution,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

they cannot construe the will in order to determine whether testator intended that the debts and funeral and testamentary expenses should be deducted in arriving at a basis for distribution.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 479.*]

3. WILLS (§ 806*)—ABATEMENT OF LEGACIES—TESTAMENTARY DIRECTIONS—CONSTRUCTION.

A will, after providing that all legacies should abate in case the estate should be valued at less than $300,000, provided. in a codicil: "I direct that all my charity bequests shall be paid in full, the inheritance tax shall be paid by my estate." *Held,* that though, as shown by other parts of the will written by testator himself, he did not use punctuation according to any recognized rule of authority, the codicil did not, as to the legacies to charities, revoke the provision as to the proportional abatement of the legacies, but only exempted such legacies from the payment of the collateral inheritance tax.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2102; Dec. Dig. § 806.*]

4. WILLS (§ 807*)—CONSTRUCTION—CODICILS—ADDITIONAL LEGACIES.

Additional legacies given by codicils in a will, in the absence of anything in the codicils indicating a contrary intention, are to be read into the will and become subject to the conditions which the original legacies to the same parties in the will are subject, and hence, where by a clause in a will all the specific legacies are subject to proportional abatement, if testator's estate is not of a certain value, an additional legacy given by a codicil to one of the original legatees also becomes subject to such abatement.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 807.*]

5. WILLS (§ 807*)—ABATEMENT OF LEGACIES—TESTAMENTARY DIRECTIONS—CONSTRUCTION.

An additional legacy given by a codicil to charity for a specified purpose, which might be rendered ineffectual, unless the amount were given without abatement, is not subject to such proportional abatement where the estate falls short of the specified value. ·

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2103; Dec. Dig. § 807.*]

6. WILLS (§ 734*)—INTEREST ON LEGACIES.

On a general legacy, the amount of which is fixed by the will and not subject to diminution, interest should be allowed on the expiration of one year after the letters testamentary are issued.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1849; Dec. Dig. § 734.*]

7. WILLS (§ 734*)—INTEREST ON LEGACIES.

The general rule that interest should be allowed upon pecuniary or general legacies from the expiration of one year after letters testamentary are issued does not apply where the amount of the legacies could not be determined, until the debts and testamentary expenses are ascertained, and the right to interest on such legacies does not arise until after such determination.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1851, 1860; Dec. Dig. § 734.*]

8. WILLS (§ 728*)—INCOME—DISTRIBUTION AMONG LEGATEES.

The balance of the accrued interest on the estate of a testator after payment of interest on fixed legacies from the expiration of one year after the issuance of letters testamentary should be divided pro rata between the residuary legatees and the general legatees, whose legacies

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

are subject to diminution under a provision of the will, where such accrued interest was not included in the valuation of testator's estate for the purposes of distribution.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1760; Dec. Dig. § 728.*]

Patterson, P. J., and Laughlin, J., dissenting in part.

Appeal from Surrogate's Court, New York County.

Proceedings for the settlement of John Frankenheimer and another, as executors of the last will and testament of Louis Gans, deceased. From a decree of the Surrogate's Court (60 Misc. Rep. 282, 112 N. Y. Supp. 259) settling the accounts of the executors, Sara G. Hackes and others appeal. Modified.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

Everett V. Abbot, for appellants Sara Gans Hackes and others.
Eugene D. Hawkins, for appellants Louis J. Hoofner and others.
Ferdinand Kursmann, for respondent executors.
Gherardi Davis, special guardian for Camilla Kohn Kerekes.
Abraham Nelson (Simon H. Glasscheib, on the brief), for respondent Beth Israel Hospital Association.
F. R Minrath (Henry Siegrist, Jr., on the brief), for respondents Hebrew Sheltering Guardian Society, Mt. Sinai Hospital, and Hebrew Orphan Asylum.
Melville C. Cane, for respondents Joseph Gans and others.
Henry L. Moses (A. M. Stroock, on the brief), for respondent Montefiore Home.
Morris A. Hulett, for respondent Lebanon Hospital Ass'n.
Benjamin Tuska (Abraham Tulin, on the brief), for respondent Educational Alliance.
James M. Chapman, for respondent Meridan.
Louis Marshall, for respondent Jewish Theological Seminary of America.

LAUGHLIN, J. The questions presented by this appeal involve no objection to the accounts of the executors. They relate only to the distribution of the estate, and depend upon the proper construction of the will and codicils.

The testator died on the 7th day of February, 1904, leaving a last will and testament with five codicils thereto. The will and codicils were duly admitted to probate by one of the surrogates of the county of New York on the 7th day of December, 1904, and letters testamentary were duly issued thereon on the 12th day of the same month. The will is dated the 17th day of July, 1902. By the first clause of his will the testator directs his executors to pay his just debts and liabilities "including funeral and testamentary expenses" as soon after his death "as conveniently may be." In clause "Second" he makes 17 charitable bequests of money, aggregating $48,500, and by clause "Third" he directs the distribution of $3,500 in three items for charitable purposes. Clauses "Fourth" to "Ninth," inclusive, bequeath legacies to various persons aggregating the sum of $75,000. These

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bequests, aggregating $127,000, are followed by clause "Tenth," which provides as follows:

"I expressly declare that the legacies mentioned in the preceding paragraphs of my will shall be paid in full only in case my total estate as valued by my executors shall amount to three hundred thousand dollars, and in case my estate shall be valued at less than three hundred thousand dollars then the legacies hereinbefore mentioned shall abate proportionately."

This is followed by clause "Eleventh," by which he gives, devises, and bequeaths "all the rest, residue and remainder of" his estate, "including lapsed legacies and legacies that shall for any reason have failed to take effect," to his executors in trust, to invest in three parts, two of four-tenths each and one of two-tenths, for the benefit of certain relatives and others, with remainders over as therein provided. The appellants are or may be interested in the residuary estate under the eleventh clause of the will.

The will evidently was drawn by and executed under the supervision of an attorney; but the codicils are all in the handwriting of the testator, and were, so far as appears, drawn and executed without the advice of counsel. The first codicil contains two specific legacies of a plate known as "Sedar Schissel" and a punch bowl. The second codicil gives to K. A. Meridan, a legatee to whom a legacy is left under one of the clauses of the will preceding the tenth, $5,000 "in addition to the sum left" to him by the will, and contains certain specific legacies of furniture, silverware, and jewelry. The third codicil bears date July 1, 1903, and, omitting the date and the signature of testator and the witnesses, it is as follows:

"I, Louis Gans, of the city, county and state of New York, do hereby add this codicil to my last will and testament. I hereby direct that all my charity bequests shall be paid in full, the inheritance tax shall be paid by my estate. I give and bequeath to Montefiore Home of the city of New York the sum of twenty-five hundred dollars in addition to the amount given in my last will and testament; said twenty-five hundred dollars are for the purpose of buying a perpetual bed in memory of my dear wife Fannie Gans. Inscription, In memory of Fannie Gans, erected by her husband Louis Gans.

"Signed, sealed this first day of July, 1903, in presence of witnesses."

The fourth codicil, so far as material to the questions presented, devises his house known as No. 134 East Seventy-Second street, in the city of New York, "together with all the furniture, books, pictures belonging to the house." The fifth codicil bequeaths a policy of life insurance on the life of the testator for $10,000, and cancels certain debts.

One of the principal questions presented for decision is what testator meant by "total estate" in the tenth clause of the will. The learned counsel for appellants contend, in effect, that those words are equivalent to net estate for distribution to the general and residuary legatees, and that it excludes the expenses of administration, including the commission of the executors and the specific legacies and devise, as well. The executors, with the exception of one small item which evidently was an oversight and is not brought in question here, valued the estate for the purposes of the tenth clause as embracing all of the property left by the testator after the payment of his debts, funeral

expenses, and the expenses of administration. They found this to be $258,000 which is 86 per cent. of $300,000, and would give the general legatees 86 per cent. of their legacies as first specified in the will; 14 per centum being abated by the tenth clause. The learned surrogate was of opinion that the expenses of administration, funeral expenses, and commissions of the executor should not have been deducted, and he modified their valuation by adding these items thereto, which made the total estate $286,358.05, giving the general legatees 95⅓ per cent. of their legacies as first specified in the will. I am of opinion that the executors adopted the correct theory of construction, and that the learned surrogate erred in modifying their valuation. The property of the testator was invested in various parts of the country and in a variety of enterprises. He doubtless foresaw that the expenses of administration would be heavy, but he could scarcely have estimated the amount with any degree of accuracy. The purpose of the tenth clause of the will was to reduce, for the benefit of the residuary legatees, the general legacies, provided the executors valued the net estate for distribution at less than $300,000. He had bequeathed in general legacies the sum of $127,000, but he intended that the executors, before paying those legacies, should carefully estimate the value of his estate that would be left for distribution, and directed, in effect, that if there would not be $300,000 or more for distribution between the general and residuary legatees, so that the latter as he then planned, although he subsequently modified it by codicils, should receive at least $173,000, the general legacies should abate in proportion. In other words, I think he intended that if the net estate for distribution should for instance be only $200,000, instead of $300,000, the general legatees should receive only two-thirds of the legacies which they would have received in full had the net estate for distribution been $300,000. No authority precisely in point on the construction of this will has been cited or found, but there are decisions quite analogous which tend to sustain the views here expressed. Smith v. Terry, 43 N. J. Eq. 659, 12 Atl. 204 ; Blakeslee v. Pardee, 76 Conn. 263, 56 Atl. 503. This conclusion probably renders it unnecessary to decide whether, as claimed in behalf of some of the appellants, the executors were given discretion in valuing the estate which cannot be reviewed; but it would seem that, although they were necessarily vested with discretion in estimating the amount that would be realized in converting the estate into money for distribution, they were not vested with any discretion with respect to the construction of the will or the basis upon which the valuation was to be made, and that, if they erroneously included or excluded items, their action would be reviewable by the surrogate.

The learned surrogate also held that the third codicil annulled or revoked, as to the charitable bequests, the tenth clause of the will. I am of opinion that this also was error. At the time this codicil was made the collateral inheritance tax law, so called, imposed a tax of 5 per cent. on such charitable legacies which would have been deducted from the legacies, so that the legatees would have received but 95 per cent. of the specified amount of the legacies if the testator had then died and left an estate which would have netted for distribution the

sum of $300,000 or more, and, if less than that sum, then only 95 per cent. of the amount to which the legacies would be abated by the tenth clause of the will. I think that the testator merely intended by directing that all of his "charity bequests shall be paid in full, the inheritance tax shall be paid by my estate," that no deduction should be made from the charitable bequests on account of the tax, and that his residuary estate should pay it. His charitable bequests are paid in full as made when they are paid either in the amounts first specified or as reduced by clause ten of the will without deduction of the 5 per cent. collateral inheritance tax. The fact that the testator wrote this codicil, that he was a layman, and that he did not, as is shown by other parts of this and by the other codicils, use punctuation points according to any recognized rule of authority, or as they are ordinarily used by educated people, have not been overlooked, and controlling significance is not attached to the use of the comma. The testator was a man of intelligence and some learning, and it would seem that if he had intended to annul the specific provision of the tenth clause of the will, which expressly provided that none of the general legacies should be paid in full unless the executors valued the estate at $300,000 or more, he would have referred to it specifically or would have more clearly shown such intention. As has been seen, the charitable bequests aggregated more than $50,000. He evidently was in doubt as to the amount of property he would leave. If the distributive estate should not equal $300,000, he had already directed that his residuary legatees should not be limited to the residuary estate left after the payment of the charitable and other general legacies, but that all such legacies should be reduced in the proportion that the distributive estate bore to $300,-000. It appears to be conceded that the provision of the codicil with respect to the inheritance tax relates to the charitable bequests only. If the sentence in the third codicil should be disconnected upon the theory that he had two objects in mind, one to annul clause ten of the will so far as it embraces the charitable bequests and the other to relieve some legacies from the payment of the transfer tax, then it would be quite as reasonable to hold that all taxes on that part of the estate which was bequeathed by general legacies should be paid out of the residuary estate as to hold that the provision relating to the tax relates only to the charitable bequests. The specific legacies of land and the insurance policies were valued by the executors in determining the total value of the estate. The appeals are only from that part of the decree which gives the general legatees more than 86 per cent. of their legacies which assumes the correctness of the valuation by the executors, and therefore the question is not presented as to whether those specific legacies or the other specific legacies should have been included in the valuation because if they should not have been included the allowance to the general legatees would have been less than 86 per cent., and, as has been seen, no objection is presented by the appeal to the decree in so far as it allows the general legatees 86 per cent. of the legacies as first specified in the will.

The surrogate held that the additional legacies given by the codicils are not subject to abatement under the tenth clause of the will. The

correctness of that ruling is challenged by the learned counsel for one set of the appellants whose notice of appeal specifically brings up for review the allowance of more than 86 per cent. of the additional legacy of $5,000 to Meridan in the second codicil and of more than 86 per cent. of the additional legacy of $2,500 to the Montefiore Home in the third codicil. These legacies are given in form as additional legacies, which, in the absence of anything in the codicil indicating a contrary intent, are under well-settled rules of law to be read into the will, and, because subject to the conditions to which the original legacies to the same parties in the will are subject (6 Am. & Eng. Enc. Law [2d Ed.] 181; Roper on Legacies, 873–876; Thompson's Adm'r v. Churchill's Estate, 60 Vt. 371, 14 Atl. 699; Pond v. Allen, 15 R. I. 171, 2 Atl. 302; Gray v. Sherman, 5 Allen (Mass.) 198. See, also, Pierpont et al. v. Patrick et al., 53 N. Y. 591; Hard et al. v. Ashley, 117 N. Y. 606–613, 23 N. E. 177), I am of opinion that the additional legacy to Meridan falls within this rule, for it is merely an increase of the amount of the original legacy, and that it is therefore subject to abatement under the tenth clause of the will. The additional legacy in the third codicil to the Montefiore Home, however, was given for a specific purpose, which since the testator is presumed to have had in mind the abatement of the legacies under the tenth clause of the will might be rendered ineffectual, unless the specific amount were given without abatement. The fact that he had in mind the possibility of the abatement of the legacies distinguishes this case from Wetmore v. St. Luke's Hospital, 56 Hun, 313, 9 N. Y. Supp. 753, which, although not cited by counsel, renders the construction which I think should be given to this additional legacy excepting it from the operation of the tenth clause of the will somewhat doubtful.

The only other question presented for consideration is whether the general legatees are entitled to interest on their legacies as abated. The learned surrogate has allowed interest from the 12th day of December, 1905, or one year after letters testamentary were issued. The learned counsel for the appellants contend that since the legacies could not have been paid at once, payment being necessarily deferred until the executors could intelligently value the estate and since they were subject to abatement, no interest should be allowed excepting upon facts showing a wrongful refusal on the part of the executors to pay the legacies after proper demand therefor. They also claim that the payment of such interest out of the estate is a taking in part of their residuary interest without due process of law. Interest upon legacies is not given either as a penalty or for the wrongful refusal of personal representatives to pay the legacies. The statute gives the executors one year within which to marshal the assets and pay legacies. If, as in this case and in many cases, that be not done within the year, the estate has the benefit of the use of the money, and the legacy, being like a debt due and payable at the expiration of one year after letters of administration or letters testamentary are issued, draws interest from that date. The executors account for upwards of $28,000 interest earned by the estate. The learned counsel for one set of appellants argues that all legatees both general and residuary should share

in the accrued interest. There is no basis in law for that course. The general legatees have no interest in the accrued interest as such. I see no point to the alleged violation of the fourteenth amendment of the federal Constitution in allowing such interest, and the rule as here stated has been sanctioned by a long line of authorities in this and other jurisdictions. Matter of McGowan, 124 N. Y. 526, 26 N. E. 1098; Thorn v. Garner, 113 N. Y. 198, 21 N. E. 149; Matter of Erving, 103 App. Div. 500, 92 N. Y. Supp. 1109; Matter of Oakes, 19 App. Div. 192, 45 N. Y. Supp. 984; Matter of Spencer, 16 R. I. 25, 12 Atl. 124; Loring v. Thompson, 184 Mass. 103, 68 N. E. 45; Wood v. Penoye, 13 Ves. 326; Bonham v. Bonham, 38 N. J. Eq. 419; Bradford v. McConihay, 15 W. Va. 732.

As no facts are in dispute, it has been suggested that the decree may be modified in accordance with our views without a rehearing, and that, on the settlement of the order, the parties may be heard with respect to the form of the modifications.

It follows that the decree should be modified in accordance with these views, with costs to all parties separately appearing payable out of the residuary estate.

PATTERSON, P. J., concurs.

SCOTT, J. I concur with Mr. Justice LAUGHLIN as to the proper construction to be given to the will of Louis Gans, deceased. I am unable to concur however in his conclusion that the pecuniary or general legatees are entitled to interest upon the several sums payable to them as legacies. The general rule undoubtedly is that interest should be allowed upon such legacies from the expiration of one year after letters of administration or letters testamentary are issued. The reason for this rule is that the statute gives to such legatees the right to receive their legacies at the expiration of that time, and, if the estate is not then so far liquidated that payment can be made, the postponement of the time for payment is deemed to have been made for the convenience or advantage of the estate. In all the cases in which this general rule has been applied the amount of the legacy has been fixed, or readily ascertainable, and the delay in payment was not due to any question as to how much the legatee should receive. In the present case, under the construction of the will which we adopt, it could not be determined until the debts and expenses of administration were ascertained what would be the amounts of the general legacies, and at the same time and by the same computation it would likewise appear how much the residuary legatees would be entitled to receive. The legatees whose legacies were subject to diminution could have no right to demand payment of their legacies until the amount thereof had been determined, and the right to interest does not arise until the right to demand accrues. As to the general legacy which is not subject to diminution, I think that it is entitled to interest from the expiration of one year after the issue of letters to be paid out of the accrued income in the hands of the executors. The balance of that accrued interest which was not included in the valuation of the estate for the

purposes of distribution should be divided pro rata between the residuary legatees and the general legatees whose legacies were liable to diminution.

McLAUGHLIN and HOUGHTON, JJ., concur.